GEORGE M. DILLEY & SON v. J. H. RATCLIFF.

Decided June 12, 1902.

**1.—Contract—Breach—Measure of Damages—Cotton Gin Profits.**

Where appellees contracted to sell and deliver within a reasonable time certain machinery necessary for the operation of a cotton gin, with notice of the purpose for which it was wanted and of the character and extent of the cotton ginning season, and it was not delivered until the most active part of the season was past, the measure of damages was the value the use of the gin would have been for the time it was so compelled to remain idle, and this could not be more certainly determined than by ascertaining the net profits the gin would have earned.

**2.—Same—Saw Mill.**

 A different rule, however, is applied as to delay from like cause in getting a saw mill into operation where the evidence showed there was no special season for sawing lumber, and that logs on hand at the mill could be sawed as well after the delay, and the measure of damages here is the cost of having the defective saw mill machinery furnished by the seller repaired and was in good condition.

**3.—Res Adjudicata—Damages—Suit on Note.**

 Although the defendant in an action brought on a note given for the price of certain machinery could have pleaded therein in set-off the damages he sustained by reason of plaintiff's ·failure to deliver the machinery in proper time, the fact that defendant did not do so will not estop him from claiming such damages in a separate suit, and a plea that the cause of action for the damages was adjudicated in the suit on the note is not well taken.

Error from the County Court of Houston. Tried below before Hon. E. Winfree.

*Campbell & McMeans,* for plaintiffs in error.

*J. W. Madden, John I. Moore,* and· *Porter Newman,* for defendant in error.

GARRETT, CHIEF JUSTICE.—This action was brought by J. H. Ratcliff in the County Court of Houston County against Geo. M. Dilley & Son to recover damages for the breach of their contract of sale of certain cotton gin and sawmill machinery to the plaintiff. We are of the opinion that the evidence very clearly shows the breach of the contract both in respect to the pulley or fly wheel of the engine by which the cotton gin was to be put in operation and certain parts of the machinery necessary to the operation of the sawmill after the ginning season was over. The only questions that present any difficulty grow out of the measure of damages. It was shown that the defendants were fully apprised of the purpose for which the plaintiff wanted the machinery and of the character and extent of the ginning season, and undertook to deliver the machinery within a reasonable time, "all complete" and "in guaranteed first-class order." The contract was entered into on July 26, 1899, and the delivery was not completed until October 3, 1899. The most active part of the ginning season included the time between August 20th, by which time the delivery should have been completed, and October 3d.

It was shown with a reasonable degree of certainty that the plaintiff lost in profits, in not being able to put .his gin in operation before October 3d, the full amount allowed for that reason. While the true rule of estimating the damages is to ascertain the value the use of the gin would have been for the time it lay idle by reason of the breach of· the contract, this could not have been done more certainly than by ascertaining the net profits the plaintiff would have made in ginning cotton if he had received the machinery. 6 · Eng. Rul. Cases, 617-626. So we think the proper measure of damages was applied by the court to the

breach with respect to the failure to supply the pulley or fly wheel for the ginning season, and that the amount allowed therefor is supported by the evidence.

But with respect to the sawing of lumber, it appeared from the evidence that there was no special season for that; that it was done at odd times, and that the logs on hand to be converted into lumber would remain on hand until they could be sawed. It was not like the ginning of cotton belonging to customers who could not or would not wait, and for which the season would pass and all profits be lost. And although the plaintiff testified that he had orders ahead for all the lumber that he could saw at the time, it was not shown that he failed to finally fill all such orders or that he was not able to do so. Thus it will be seen that the same measure of damages should not be applied to both cases. Not only were the same consequences of the breach not reasonably within the contemplation of the parties, but there was no special loss shown to have resulted from a failure to convert the logs into lumber during the time the sawmill was idle. The proper measure of damages suggested by the facts in evidence in case of the defects in the rocker shaft and governor, by reason of which the operation of the sawmill was delayed, was the cost of having them repaired and put into good condition, which would include the expense of sending them to Palestine and of any necessary expense and loss of time in the attempt to repair the same.

While the plaintiff may have pleaded the damages for the breach of the contract in set-off to the defendant's action upon the notes given for the machinery, he did not do so, and his cause of action therefor was not in any manner drawn into that suit, consequently the cause of action in favor of the plaintiff for damages was not adjudicated by the judgment in the suit upon the notes. It is believed that what has been said disposes of all the questions likely to arise upon another trial. For the reason that more damages were allowed for the defective rocker shaft and governor than was warranted by the evidence, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*