BUTLER, WILLIAMS & JONES, a Co-Partnership, et al., Appellants,

v.

R. H. GOODRICH, Appellee.

No. 13133.

Court of Civil Appeals of Texas.

Houston.

Oct. 24, 1957.

Rehearing Denied Nov. 7, 1957.

799

John M. Barron, Bryan, and W. E. Barron, Navasota, for appellant.

McClain & Harrell, Conroe, for appellee.

WOODRUFF, Justice.

R. H. Goodrich, appellee, instituted this suit on August 6, 1955, in the District Court of Waller County against the appellants, Carl L. Butler, Jr., Glynn A. Williams and Truman R. Jones, Jr., individually and as co-partners doing business as Butler, Williams & Jones, seeking damages in the sum of $9,156 sustained as the result of the alleged breach of a contract between appellee and appellants providing for the repair and replacement of a portion of appellee's house. He also sued on a written guaranty which was executed by appellants in favor of appellee upon completion of the job.

Previously, on March 6, 1951, the parties hereto had entered into a written contract whereby appellants agreed to construct a house for appellee for a total amount of $72,320.25 according to the plans and specifications prepared by appellee's architects, which provided that the roof was to be of a lightweight concrete known as "Permalite." The specifications on this item were very definite, stating the exact proportions of the material to be used in mixing each

batch of Permalite which included the amount of water, the mixing methods, batch sizes and the time of mixing. The curing methods set forth in the specifications called for the placing of Sisalkraft paper or some equal material upon the concrete within six hours after it was poured, and the paper was to be kept thereon for at least ten days.

The house had two roof levels, one above the one-story section and the other above the two-story section. On December 4, 1951, the roofs on both levels had been completed, when a tornado on that date destroyed the roof above the two-story section.

Pursuant to the terms of the original contract, appellee Goodrich had taken out a builder's risk insurance policy with the American General Insurance Company which protected both the contractor and the owner against all loss occasioned by wind damage, in the maximum amount of $15,-000. Shortly after December 4, 1951, a representative of the insurance company requested the appellants to estimate the cost of repairing the damage done by the storm and after an exchange of letters between December 7, 1951, and December 20, 1951, appellants agreed with the representative of the insurance company to make all necessary repairs caused by the storm for an amount equal to the actual cost of the work plus $3,000 for overhead expenses and profit. This was the method of establishing the amount of the loss under the terms of the builder's risk insurance policy. The agreement, therefore, had to be submitted to appellee Goodrich for his approval, which was done by a letter addressed to him dated December 17, 1951, stating the terms of the agreement which had been worked out with the representative of the insurance company. Goodrich approved the agreement with the proviso that he would not be obligated to pay appellants in any event a greater amount than that received by him from the insurance company and that payment for the repair work should be made when it was completed and approved by his architects. This addenda was accepted by appellants by letter dated December 20, 1951. Appellants finally received a total amount of $8,580.15 for this work.

It was necessary to put a new Permalite roof on the two-story portion of the building. Appellants went forward with the work and poured the Permalite roof during a seven day period about the middle of January, 1952. On March 5, 1952, at the completion of the work appellants gave appellee a letter which read: "We guarantee all workmanship and material used in the construction of your residence near Hempstead, Texas, for a period of one year. Fair wear and tear excepted," which appellant Jones testified included all the work.

In September or November of 1952, the roof started flaking to some extent. Appellee said he did not know what caused it but, as time passed, the flaking or spalling became progressively worse. The proof further showed that the house started leaking badly, and especially around the chimney, all of which occurred on the second story level. As a result of the progressive deterioration, appellee filed this suit in August, 1955.

It was further shown that originally he had joined the Detering Company who furnished the material known as Permalite on the job, and also his architects, Wilson, Morris & Crain, but before the suit came on for trial they were dismissed and the pleadings amended so that appellants were the only defendants.

Upon trial the appellee complained only of the condition of the roof above the second story part of the building. All witnesses agreed that the roof was definitely defective because the spalling and disintegration had increased by November, 1956, to the extent that the roof was coming off in large pieces and strips. The issue between the parties on this point raised by the testimony was whether or not the defect was caused by the failure of appellants to follow the architects' specifications in measuring

and mixing the Permalite and in not following the method of curing the concrete as set forth in the specifications; or whether or not the failure of the roof was due to an inherent defect in the material itself which made it unsuited for roofing material, and especially in Waller County. In connection with the latter contention it was the appellants' position that appellee's architects had specified use of the Permalite material and they and appellee were responsible for the defective condition of the roof and not the appellants.

The case was submitted to the jury on nine special issues. By their answers as contained in the verdict, the jury found that the defects in the roof which developed within one year from March 5, 1952, were a direct and proximate result of the workmanship and materials used in the construction of the roof by the appellants; that appellants failed to mix the Permalite concrete for the roof as provided by the contract specifications, which failure was a proximate cause of the defects in the roof; that the appellants failed to cover the Permalite concrete with Sisalkraft paper, or equal, within six hours after pouring, and to leave it thereon for at least ten days, and that was a proximate cause of the defect; that the Permalite-type roof specified by the contract was not unsuitable for residential purposes in Waller County, and, therefore, the following issues of proximate cause and sole proximate cause were not answered. In response to the issue inquiring as to the reasonable and necessary cost in Waller County of replacing the roof the jury answered: "$7,560.00."

Judgment accordingly was entered by the trial court on December 10, 1956, in behalf of the appellee against the appellants, individually and as co-partners, for $7,560 with interest from date at the rate of 6% and costs of suit. On December 13, 1956, appellants filed a motion for new trial, which was overruled by the trial court on December 14, 1956, appellants duly excepting, and this appeal has been duly perfected to this Court.

Appellants by ten points of error present four basic contentions in seeking a reversal of this cause. Each will be discussed separately along with appellee's applicable counter-points.

First, appellants contend that appellee is estopped to prosecute this suit by a judgment previously rendered in the District Court of Brazos County in which appellee Goodrich was the real party at interest, and where, so they assert, the issue of proper performance of the roofing contract was litigated and determined against the appellee and, therefore, the trial court erred in this cause in excluding the certified copies of the pleadings and the judgment in the suit to establish the defense of estoppel by judgment in this cause.

When appellants attempted to introduce in evidence the proceedings in Cause No. 13,572, styled Carl L. Butler, Jr., et al., v. American General Insurance Company, entered April 8, 1953, and to question appellee Goodrich in regard to his connection with that case, appellee's counsel objected to such testimony, first because there was no pleading to support it, and secondly, different parties were involved, appellee Goodrich not being a party thereto, and thirdly, the issue there was a separate and entirely different issue than that involved in this suit. The trial court sustained the objection and excluded the testimony.

Appellants contend that they had sufficiently pled res judicata in their answer by the following language:

"* * * and the further fact that all issues as to the proper and good and workmanlike performance of the contract and agreements herein have been heretofore fully decided and settled as provided by law and by contract, upon identical issues controlling, the plaintiff is estopped to deny the fully and satisfactory and substantial performance of the contract or contracts, aforesaid, and that all matters controlling herein and all issues have been fully satisfied and adjudicated."

In support of the trial court's ruling, appellee cites Rule 94, Texas Rules of Civil Procedure, which provides that the defense of res judicata and any other matter constituting an avoidance or affirmative defense must be pleaded by the defendant to be available as a defense.

Appellants point out that appellee did not except to their pleading and, therefore, he should not be permitted to complain of its insufficiency.

 The provisions of Rule 90, that every defect, omission or fault in a pleading, either of form or substance, which is not specially pointed out by motion or exception in writing shall be deemed to have been waived, is restricted by its terms to parties seeking a reversal of the trial court's ruling. However, in this case the trial court ruled that the pleadings were not sufficient to raise such issue, thus sustaining the appellee's objection to the testimony, and under these circumstances an exception to the insufficiency of the pleadings was not required.

This rule is set out very clearly in a case in point where the affirmative defense of novation instead of res judicata was in issue. In Lincoln v. King, Tex.Civ.App., 193 S.W.2d 437, no writ, 439, it is said:

"Appellants admit that they did not plead that the 'said contract had been novated, abandoned, rescinded, and/or a new contract substituted therefor,' but they contend that a novation was sufficiently pleaded by them in their supplemental answer * * *.

"Appellants contend that appellees waived any right to complain about their pleadings since they did not except to them as provided for in Rule 90, Vernon's Texas Rules of Civil Procedure. Rule 90 provides that every defect, omission, or fault in the pleadings, either of form or substance, which is not specifically pointed out by motion or exception in writing and

brought to the attention of the judge shall be [deemed] to have been waived by the party seeking reversal on such account. But we do not believe such rule is applicable here since appellees are not seeking a 'reversal' because of the insufficiency of the pleadings but they are seeking to uphold the judgment rendered by the trial court which held that the pleadings were sufficient. It is our opinion that appellants' pleadings did not give sufficient notice to the adverse party that they were claiming novation as a defense. Rule 47 of Vernon's Texas Rules of Civil Procedure requires that a pleading for a 'counter-claim' or 'cross-action' 'shall contain a short statement of the cause of action sufficient to give fair notice of the claim involved.' It appears to us that the appellants did not comply with the provisions of Rule 47.

"Appellants contend further that when the testimony was offered by them to establish a new contract in lieu of the former obligation that appellees did not object on the grounds of the insufficiency of the pleadings but the record reveals that counsel for appellees did object to the introduction of such evidence because it was not supported by the pleadings."

Another case announcing the same rule is Watson v. Texas State Bank of Jacksonville, Tex.Civ.App., 222 S.W.2d 341, no writ. In this case the defendant had failed to deny the existence of a partnership under oath in a plea of privilege, as required by Rule 93, T.R.C.P. The plaintiff filed no exception to the plea but prior to the entry of judgment urged that the plea of privilege should be overruled because the defendant had not denied partnership under oath. The trial court overruled the plea of privilege, and in affirming the court's action the Court of Civil Appeals held that under Rule 90 the plaintiff was not required to file an exception in order to avail himself of the defendant's lack of proper pleading during the trial. The

opinion cited Lincoln v. King, supra, and in its holding quoted a considerable portion of the language of that case, as set out above.

The same rule is applicable in this case. Since the appellee is not seeking a reversal because of the insufficiency of the pleadings but is seeking to uphold the trial court's ruling that the pleadings were insufficient to raise the issue of res judicata, it was not necessary that he first raise it by special exception.

The next question presented is whether or not appellants' pleadings were sufficient to raise the issue of res judicata. The rule setting forth the necessary allegations of such a plea is stated in 26 Tex.Jur., Sec. 505, pp. 331–333, as follows:

"Necessary Allegations.—A plea of res judicata should show that the judgment invoked as a bar or as an estoppel was a valid, final adjudication, rendered by a court of competent jurisdiction on the merits of a controversy in which the plaintiff and the defendant were parties litigating adversely to each other, or else were privies of such parties. If the judgment is pleaded in bar it should also appear that the cause of action in the first suit was identical with that presented in a suit immediately before the court; and if the judgment is pleaded as an estoppel, it is necessary to show that the identical issue in respect of which the judgment is sought to be invoked was decided by it."

Referring to appellants' answer, it will be noted that nowhere does it refer to any judgment or state the identity of the parties to any litigation, or how the issues in the instant suit have been settled or adjudicated by a judgment, or how the appellee is estopped in this case by any prior judgment.

In 26 Tex.Jur., Sec. 506, p. 334, it is said:

"Sufficiency of Plea.—It is obvious from what has been said in the preced-

ing sections that in order to be effective, a plea of res judicata must be sufficient to notify the adverse party that a judgment is relied upon by the pleader. If it does not suffice to do this, it need not be denied nor demurred to, because there is no issue of res judicata in the case, and any judgment based upon the theory that there was would be fundamentally erroneous."

We cannot burden this opinion with the discussion of many cases in which our courts have held that allegations directly setting forth prior judgments have been held to be insufficient to raise the issue of res judicata. Reference is made, however, to the following cases which we believe to be in point: Philipowski v. Spencer, 63 Tex. 604; Norris v. W. C. Belcher Land Mortgage Co., 98 Tex. 176, 82 S.W. 500; Lott v. Lofton, Tex.Civ.App., 280 S.W. 312, no writ; First National Bank of Bryan v. White, Tex.Civ.App., 91 S.W.2d 1120, writ dismissed.

We believe that the language hereinafter set out, which was taken from the case of Smith v. Nesbitt, Tex.Civ.App., 235 S.W. 1104, 1107, no writ, will illustrate that the appellants' pleadings in this case were wholly insufficient to raise the issue. In that case it was said:

"We do not think appellees' plea of res judicata was sufficient. The plea is as follows:

" 'Defendants show that said item of $73.31, and said other items, having been paid prior to suit and judgment in case of Smith v. Nesbitt, and said items not having been pleaded or attempted to be recovered in said suit when the same might have been litigated therein, that said case and judgment therein is res adjudicata of any suit to recover thereon, and of that item in so far as set up in this suit.'

"A party pleading res judicata must show, by distinct allegations, material and essential facts necessary to consti-

tute a proceeding res judicata. Philipowski v. Spencer, 63 Tex. 604. The concurrence of the following conditions are generally regarded as essential, to wit: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and of the parties to the action (4) identity of the quality in the persons for or against whom the claim is made. 2 Bouv.Law Dict. [Rawle's Third Revision] p. 2910; Philipowski v. Spencer, 63 Tex. 604.

"Though plaintiff did not even demur to defendants' answer, in which they pleaded res judicata, yet we think the plea as presented is wanting in the essential elements of the plea, and is insufficient to sustain a judgment * * *."

Under the authorities, the pleadings upon which appellants rely in this case were wholly insufficient to raise an issue of res judicata and, therefore, the trial court did not err in excluding the testimony regarding the Brazos County suit.

However, we are of the further opinion that if the appellants' pleadings had been sufficient to raise the issue of res judicata or if appellee's had failed to object to the testimony and thus waived the insufficiency of the pleadings, the evidence, including that which was excluded by the trial court and tendered by appellants as a part of their bill of exceptions, would have been wholly insufficient to have established that defense.

In this connection it should be observed that it is apparent that appellants sought to raise the issue of res judicata under the doctrine of judgment as an estoppel, and not in bar. Any doubt in this connection was removed by the statement of appellants' counsel made in argument to that effect.

■ In order for a prior judgment to operate as an estoppel, it must be shown that the issue in the second suit, as to which the estoppel is urged, was within or substantially within the issues which were determined in the first suit. In determining this question, it is necessary that the issues in the present suit must fall within the scope of the pleadings in the previous suit. 26 Tex. Jur., Sections 441, 442, pp. 188–189; International & G. N. R. Co. v. Concrete Inv. Co., Tex.Civ.App., 201 S.W. 718, affirmed Tex.Com.App., 263 S.W. 265; Jones v. Jones, Tex.Civ.App., 221 S.W.2d 291, no writ; Davis v. First National Bank of Waco, 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1.

■ The appellants' petition in the Brazos County case asserted a cause of action in their behalf against the American General Insurance Company only. They alleged that by the terms of the policy they were insured against any loss occasioned by windstorm during the construction of the building and that an agreement had been effected with the insurance company whereby the loss incurred by reason of the windstorm amounted to approximately $8,580.15, which defendant agreed to pay to petitioners (appellants here) and of the amount $7,308.13 had been paid, leaving a balance of $1,272.02.

In the alternative it was alleged that the agents of the American General Insurance Company had made an unequivocal offer to pay the sum of $1,272.02 and costs of court for a complete settlement and release, which petitioners had accepted by executing and delivering such instruments to the defendant, American General Insurance Company, and by reason of its breach of said agreement they were damaged in the sum of $1,272.02.

The answer of the American General Insurance Company consisted of several special exceptions directed to the insufficiency of the petition, one of which suggested that R. H. Goodrich was "jointly interested with the plaintiffs" and was "a necessary party." The remainder of the answer consisted of a general denial. The judgment dated April 8, 1953, awarded appellants a recovery against the American General Insurance Company of $1,272.02 and costs,

overruled the special exceptions and denied any further relief.

It was shown that the American General Insurance Company before filing an answer was willing to pay appellants without offering any contest but the appellee wanted the last payment of $1,272.02 withheld until "it rained." The company advised appellee that he would have to assume the defense of the suit.

It was undisputed that he hired the attorney who filed the answer in the name of the American General Insurance Company and paid him a fee for doing so. Appellants contend that Goodrich, by filing the answer for the insurance company, made himself a party to the suit although he never became a formal party.

Appellee contends, however, that if he should be treated as having become a party to the Brazos County suit the pleadings and judgment show, as a matter of law, that different issues were involved in that suit and that the breach of contract issues involved in this suit were not raised nor litigated and neither were they necessary to the judgment entered in that suit. Appellants in their suit against the insurance company alleged upon the insurance contract and a discharge of their agreement entered into with the company's representative. Their recovery did not depend upon any proof of performance of the contract with appellee Goodrich.

In 26 Tex.Jur., Sec. 446, p. 200, it is said:

"A judgment is not technically conclusive of any matter which is not such that it had of necessity to be determined by the court before judgment could have been given; and it follows from this that an issue which was in no way material to the decision of the controversy before the court will not be regarded as res judicata in a subsequent suit between the parties."

Moreover, the issues concerning the breach of the contract could not have been litigated under the pleadings in the Brazos County suit against the insurance company and the judgment there rendered could not be an estoppel in this suit. Whitney v. Parish of Vernon, Tex.Civ.App., 154 S.W. 264, writ refused; Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 66 L.R.A. 745; Cessac v. Leger, Tex.Civ.App., 214 S.W.2d 860, writ refused, n. r. e.

There is another reason, in our opinion, why the Brazos County suit could not form the basis of a plea of estoppel by judgment. That is because appellee could not have litigated his action for damages for the breach of the contract by appellants without first intervening in that cause with leave of the court and filing a cross-action therein.

His cause of action for damages for the breach of the contract was legally severable and distinct from appellants' suit and since appellee did not file a cross-action, his cause of action was not adjudicated by the Brazos County judgment.

In Dilley v. Ratcliff, 29 Tex.Civ.App. 545, 69 S.W. 237, 238, it was said:

"While the plaintiff might have pleaded the damages for the breach of the contract in set-off to defendants' action upon the notes given for the machinery, he did not do so, and his cause of action therefor was not in any manner drawn into that suit."

And likewise, in the case of Estapa v. Saldana, Tex.Civ.App., 218 S.W.2d 222, on page 224, refused, n. r. e., the following quotation from Berry Bros. v. Fairbanks, Morse & Co., 51 Tex.Civ.App. 558, 112 S.W. 427, 429, was quoted with approval:

" 'A cause of action on a written contract, though executory, and a cause of action for damages for a breach of the contract, are legally severable and distinct, and are not so drawn together that the one cause of action necessarily involves and includes the other. A cause of action for damages is not ad-

judicated by a judgment in a suit on a contract of sale. Dilley v. Ratcliff, 29 Tex.Civ.App. 545, 69 S.W. 237. Consequently a judgment on the contract would not be a bar to an independent and subsequent suit for damages for breach of the contract.' "

■ The appellants' second contention is that the evidence is insufficient to sustain the findings of the jury and the judgment rendered thereon because it is speculative and uncertain and the inferences reasonably drawn therefor are equally as strong to show no breach as they do a breach of the contract on the part of the appellants.

Appellants contend that appellee failed to discharge the burden of proof because the testimony in this case does no more than to present facts and circumstances from which it is equally consistent to infer that the deterioration of the roof was due to an inherent defect in the Permalite as it was to infer that it was due to a failure on the part of the appellants to mix the Permalite according to the specifications, or to cure it in accordance therewith. In support of this contention, they cite Bowles v. Bourdon, Tex., 219 S.W.2d 779; Hart v. Fielden, Tex.Civ.App., 295 S.W.2d 911, writ refused, n. r. e.; Phillips Petroleum Co. v. West, Tex.Civ.App., 284 S.W.2d 196, writ refused, n. r. e.; Comet Motor Freight Lines v. Holmes, Tex.Civ.App., 175 S.W.2d 464, writ refused, w. o. m.; and Davis Transport, Inc., v. Bolstad, Tex.Civ.App., 295 S.W.2d 941. Although each of these cases involved tort actions, we do not disagree with the principles of law announced therein.

We cannot agree, however, with the appellants' contention that the "equal inference" theory has any application to this case. The testimony here was not of such nature that the jury was obliged to draw inferences therefrom in order to determine the fact issues. Mr. and Mrs. Goodrich testified to the failure of the workmen to measure the ingredients of the concrete, to the use of a timing device or a mixer in mixing the concrete when the specifications required same. They also testified that the Sisalkraft paper was not placed on the roof and kept there ten days, which was required by the specifications. Several witnesses, including appellant Jones, testified that these facts would have a material bearing on the strength of the Permalite. The witness, Raymond Weisinger, a roofing contractor with limited experience in Permalite roofs, and Dr. Ardis White, an expert in concrete, both testified that on the basis of their inspections in their opinion the spalling was due to improper mixing and curing of the concrete. Likewise, the architect, Norris, testified that his firm had built similar roofs in Lake Charles, Longview and Houston before and after the Goodrich job under the same specifications and had not had any trouble with them. He also testified that Permalite roofs were used extensively in California, Florida and in Texas. No one contended that the first-floor roof was defective, it having been poured before the tornado.

Bob Mitchell Galloway, appellants' expert witness, said that the failure of the roof was due to the materials being wholly unsuited for roofing because it would take up great quantities of water in wet weather and freeze and crack the concrete, thus causing deterioration. His theory was supported by the opinion of the appellant, Truman Jones, also an engineer and a teacher at A & M College. There was sufficient testimony to support either contention. The jury answered the issues favorably to the appellee.

■ Appellants further contend that the trial court erred in submitting Special Issue No. 1 because it is global in nature and too general.

Special Issue No. 1 reads as follows:

"Do you find from a preponderance of the evidence that the defects in the roof in question which developed within one year from March 5, 1952, were a direct and proximate result of the

workmanship or materials used in the construction of such roof by Defendants?"

This suit was brought on the written guaranty for one year from March 5, 1952, as well as the specific violation of the written contract concerning the replacement of the roof. This special issue was submitted on the guaranty which was entirely separate from the written contract of December 20, 1951. Appellants cite Texas & New Orleans R. Co. v. Hayes, Tex., 293 S.W. 2d 484. There is a clear distinction between that case and the case here under consideration. In the case cited, the issue was the negligence of the defendant and it simply held that a party is not entitled to a general issue submission and a special issue submission of the same fact issue.

In our opinion, there is a distinction between the manner in which the special issues should be framed in this type suit and in negligence cases. This seems to have been recognized in the case cited by appellants of Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 104, wherein it was specifically stated in the opinion that it did not deal with cases other than "negligence" cases in the submission of so-called "global" issues.. In this connection, the court said:

"We hold it was reversible error to submit the issues in question in the form used and that on the next trial separate issues should be submitted for each item of defectiveness alleged and proved. At the same time we do not consider that we are overruling City of Houston v. Lurie [148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61] or Howell v. Howell [147 Tex. 14, 210 S. W.2d 978], or even limiting their effect in cases other than those of negligence to which they might be applicable."

In our opinion, since Special Issue No. 1 was based upon appellee's cause of action under the written-guaranty theory it was not subject to the criticism urged by the appellants, especially in view of the testimony offered in this case by appellee tending to show why the roof was defective. Similar issues on "good and workmanlike manner" have been held to be sufficient to support a judgment in favor of the parties submitting them. Westbrook v. Watts, Tex. Civ.App., 268 S.W.2d 694, writ refused, n. r. e. But irrespective of whether Special Issue No. 1 was defective, the jury's answers to the remaining special issues were sufficient to support the judgment entered herein. This contention, therefore, is overruled.

■ Appellants' fourth contention is that the court erred in rendering judgment for appellee because the proof shows without dispute that he accepted the roof for three and one-half years before filing suit and that he is therefore estopped to recover damages.

Other than appellee's delay of three and one-half years before instituting suit, we find nothing upon which appellants can rely for claiming a waiver or estoppel. It is admitted that appellee started complaining about his roof in the latter part of 1952, and there is no evidence that appellee ever accepted the defective roof. Neither he nor his architect ever accepted or gave final approval of the roof.

■ Nevertheless, no issue was requested or submitted to the jury and therefore appellants are now precluded by Rule 279, T. R.C.P., whereby all such issues are presumed to have been found by the trial court in support of its judgment.

Affirmed.