## PARK PRESBYTERIAN CHURCH OF ITALY v. WILLIAM CAMERON & CO., Incorporated, et al.

### No. 1620—6039.

Commission of Appeals of Texas, Section A. March 15, 1933.

Judgment of the Court of Civil Appeals reversed, and judgment of the Trial Court affirmed.

Thompson, Knight, Baker & Harris and Lewis M. Dabney, Jr., all of Dallas, for plaintiff in error.

J. L. Gammon, of Waxahachie, Sleeper, Boynton & Kendall, of Waco, and J. T. Suggs, Jr., of Dallas, for defendants in error.

SHARP, Judge.

Wm. Cameron & Co., Inc., instituted this suit in the district court of Ellis county against the Park Presbyterian Church of Italy, Owens-Nash Construction Company, and the Southern Surety Company. In this opinion we will designate Wm. Cameron & Co., Inc., as Cameron & Co., the Park Presbyterian Church of Italy, as the church, Owens-Nash Construction Company, as the contractor, and the Southern Surety Company, as the surety company. Cameron & Co. alleged that the church owed it a balance of $2,298.10 and asked for a judgment against the church, the contractor, and the surety company for that amount, and for a foreclosure of its materialman's lien on the church building. The church, by its answer, contended that Cameron & Co. had no materialman's lien and that it was not personally liable for the debt. By cross-action, the church sought judgment against the surety company for the amount it had spent above the contract price to complete the building and for the amount that Cameron & Co. might establish against the church and against the contractor for the amount it expended over the contract price and the amount of Cameron & Co.'s claim. The surety company, by its answer, contended that Cameron & Co. was not entitled to a personal judgment against it under the terms of the bond and that Cameron & Co. had not fixed any materialman's lien, and further that it was entirely released from the bond because the church and the contractor had materially changed the terms of the contract, in that the church had paid to the contractor three

items, totaling $850, which had not been paid to the contractor for either labor or material put into the building, and that the amount was paid without presentation of a statement for labor or material therefor certified by the contractor and indorsed by the engineer. The trial court denied Cameron & Co. recovery against the surety company, but allowed its lien upon the property of the church and rendered judgment in favor of Cameron & Co. against the contractor and the church decreeing a foreclosure of the lien. The church, in turn, was granted a judgment against the contractor for the full amount of Cameron & Co.'s recovery, together with the excess of the cost of completion of the building above the contract price therefor. The court also granted judgment in favor of the church against the surety company for an amount equal to the total of Cameron & Co.'s recovery against the church and the excess cost of completion of the building, less the amount of $850 paid to the contractor which had been shown to have been made neither for material nor labor. The surety company was granted judgment over against the contractor. The contractor allowed judgment by default. Cameron & Co. took no exception to the judgment, but the church and the surety company appealed to the Court of Civil Appeals, and that court reversed the judgment of the trial court in favor of the church against the surety company and rendered judgment that the church take nothing against the surety company. In all other respects the judgment of the trial court was affirmed. 38 S.W.(2d) 901.

It is contended that the Court of Civil Appeals erred in holding that payments aggregating $850, which were alleged to have been made to the contractor without a proper engineer's certificate, released the surety company from all liability under its bond and not merely to the extent of the payments. Upon this question the writ of error was granted.

The controlling facts are these: In January, 1926, Owens-Nash Construction Company made a contract with the church to erect a building at an agreed price of $16,745 and executed a bond with the Southern Surety Company as surety, conditioned that the contractor would complete the building and pay for all labor and material used in its construction and deliver same clear of all liens to the church. The contract between the church and the contractor, which was made a part of the bond, contained the following provisions: "All payments (under the contract) shall be paid by the owner to the contractors as follows: All labor and wage expenses shall be paid weekly on certificate of the contractor, endorsed by the engineer. All material and other charges except labor and wages to be paid within ten days after presentation of statement certified by the

contractor and endorsed by the engineer. Upon completion of the work and final acceptance by the engineer, the contractor shall present evidence satisfactory to the engineer and owner that there are no claims or liens against the work. Within ten days after presentation of the above evidence of no claims or liens, the owner shall pay all remaining funds due to the contractor upon the engineer's certificate."

The bond contained the following provision: " * * * If the said Owens-Nash Construction Company * . * * shall complete said contract according to the plans and specifications for same, and shall indemnify said obligee against all loss or expense resulting from the failure of said Principal to pay all labor and material bills in connection with said contract, then this obligation shall become null and void, otherwise to remain in full force and effect."

Willis Livingston was the local agent and representative of Cameron & Co., and as such sold and delivered the lumber to the contractors for the job. He was a member of the church and treasurer of the building fund for the church. He was selected by all parties as the engineer in charge of the building. He filled these positions with the full knowledge and consent of the parties, and it is undisputed that he faithfully fulfilled the trust committed to his care and what he did in connection with the entire transaction was entirely satisfactory to all parties. All bills presented to Livingston were paid by checks signed by him and countersigned by Mr. George, and the bills were then receipted. On each occasion the party presenting the bill would also present an order from the contractor. The payments complained of by the surety as being in violation of the contract consisted in the issue of two checks payable to Owens-Nash Construction Company, one for the sum of $250 and one for the sum of $150, and the issuance of a draft to the Dallas Press Brick Company in the sum of $450. At the time of the issuance of the check for $250, material and labor amounting to $10,426.30 had been put into the building, and the church had paid out only $4,574.90. At the time of the issuance of the check for $150, material and labor amounting to $13,235.47 had been put into the building, and the church had paid out only $6,542.35. At the time of the issuance of the draft for $450, material and labor aggregating $11,703.84 had been put in the building, and the church had paid out only $7,345.29. The draft for $450 was signed by Livingston and delivered to the Dallas Press Brick Company on the written order of the contractor. George, the chairman of the building committee, countersigned the checks and was consulted about and agreed to the issuance of the draft, and countersigned and indorsed it. The contractor, about the 5th

of May, abandoned the contract, and the church, under the terms of the contract, notified the surety company thereof and then proceeded to complete the building at a cost of $1,493.98 above the contract price.

█ The rule is well settled in this state that a surety has the right to stand upon the terms of his contract and if any material change is made in the contract without his consent, regardless of whether the change injures or benefits him, it ceases to be his contract and he is no longer bound by its obligation. Fidelity & Deposit Co. v. Kelsay Lumber Co. (Tex. Com. App.) 33 S.W.(2d) 731; Ryan v. Morton, 65 Tex. 260; Lane & Saylor v. Scott & Culver, 57 Tex. 370; Durrell v. Farwell, 88 Tex. 98, 30 S. W. 539, 31 S. W. 185; Bullard v. Norton, 107 Tex. 571, 182 S. W. 668; Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 77, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803.

The courts of this state have applied the foregoing rule where the contract provided that payment shall be made as the work progresses according to the amount of materials furnished or work performed upon certificates to be made by the supervising architect and that a certain percentage of the contract price shall be retained until the contract is fulfilled, and if payment is made in disregard of the provisions of the contract, that as between the surety and the principal a nonconsenting surety is released. Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554.

The Honorable Court of Civil Appeals held that this case was controlled by the rule announced in the cases of Williams v. Baldwin, supra, and Fidelity & Deposit Co. v. Kelsay Lumber Co., supra. In the case of Williams v. Baldwin the owner sued the contractors and sureties and made the materialmen and laborers parties to the suit and answered seeking a recovery upon the bond. The bondsmen pleaded that the owner had violated the terms of the contract which were a part of the bond relating to payments and that he had changed the plans and specifications for the building without their knowledge and consent, for which reason they were discharged. The court held that the violation of the express terms of the bond discharged the sureties from all liability to him. The case of Fidelity & Deposit Co. v. Kelsay Lumber Co. involved a building contract, in the performance of which the surety stipulated that the contract price should be paid by the owner to the contractor in weekly installments on certificates of the architect, based upon 75 per cent. of the value of the material furnished and labor performed in the construction of the building, and the court held in that case that where the parties made a new contract without the consent of the surety and violated the terms of the

contract, it released the surety from any liability thereon.

We think the Court of Civil Appeals failed to distinguish the facts involved here from the facts involved in the two cases just cited. It was correctly held in those two decisions that where the plain provisions of a contract requiring a certain percentage of the contract price to be held until the work is completed are disregarded and violated without the consent of the surety, the surety is released from the obligation.. The rule announced in those cases is sound and is supported by the great weight of authority.. But that is not the case in hand. The contract involved in this suit contains no such provision requiring a certain percentage of the contract price to be retained until the job is completed.

The question here for decision is: Do the facts of this case show that a material change has been made in the terms of the contract to such an extent as to release the liability of the surety thereon? The facts are undisputed that when the amounts aggregating $850 were paid, the contractor had been paid a sum materially less than that due him by the. church under his contract.

█ We think the sound rule to be that if the change alters the legal identity of the instrument or substantially increases the chances of loss to the surety, it is material and will release the surety. On the other hand, if the change or departure is immaterial as one which does not change the legal effect of the instrument or place the surety in a different position, he will not be released. 50 C. J. pp. 121, 122, § 201 and authorities cited in footnotes; 21 R. C. L. p. 1014, § 62. Where the payments are made to the contractor, as was done here, when considered in connection with the whole contract, and they do not constitute an inducement to the contractor to abandon the work, such payments do not, as a matter of law, constitute a release of the surety from his entire obligation but only pro tanto. The rigid rule announced by some authorities with respect to what will discharge the surety on his contract in some instances has been relaxed. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621, 622; Equitable Surety Co. v. United States of America et al., 234 U. S. 448, 34 S. Ct. 803, 806, 58 L. Ed. 1394. In the case of Hess & Skinner Engineering Co. v. Turney, supra, the engineering company executed a bond as principal with the Lyon Bonding & Surety Company as surety to Bastrop county, conditioned that the H. & S. Engineering Company would construct a bridge and promptly make payments for labor and material therefor. To avoid its liability on the bond, the surety company relied upon two grounds: (1) That the bridge company shipped the steel without requiring one-half its cost to be paid in

cash at point of shipment, when the contract between the bridge company and the engineering company entitled it to such cash payment; and (2) that the bridge company, when it held an assignment of the contract from the engineering company, to secure the purchase price of the steel, consented for $6,499.80 to be applied to claims of laborers and local merchants, and that this had the effect of reducing the surety's obligation to the bridge company in that amount. It was also contended in that case, among other things, that a material change in the terms f a contract on which one is secondarily liable as surety, without the surety's consent, will discharge the surety from his obligation under the contract. Mr. Justice Greenwood rendered the opinion of the court, and in answer to the contention that the surety was released from its obligation, said:

"There never was any change in the contract guaranteed by this surety company. Such contract was silent as to the terms on which the material for the construction of the bridge was to be purchased. The bond in effect authorized the contractor to make his own terms, and we see no good reason why it should be held that this did not include authority, while acting in good faith, to change such terms.

"As said by the Supreme Court of the United States in United States Fid. & Guaranty Co. v. Golden Pressed & Fire Brick Co., 191 U. S. 425, 48 L. Ed. 242, 24 S. Ct. 144: 'The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time."

■ Articles 5452, 5453, 5454, 5455, et seq., of chapter 2, title 90, Revised Civil Statutes of 1925, provide for the protection of any person furnishing material and labor in the erection of a building and how the claim may be secured by lien. The bond executed in this case provides that the contractor "shall complete said contract according to the plans and specifications for same and shall indemnify said obligee against all loss or expense resulting from the failure of said principal to pay all labor and material bills in connection with said contract." The evident purpose of the bond was to protect the church from the failure of the principal to pay labor and material bills in the construction of the building. It should be construed in the light of the foregoing statutes.

The case of Equitable Surety Company v. United States, supra, involved the construction of the bond given under an Act of Congress of February 28, 1899 (30 Stat. 906, c. 218), modeled after an Act of August 13, 1894, entitled "An Act For the protection of persons furnishing materials and labor for the construction of public works" (28 Stat. 278, c. 280, 40 USCA § 270 note). It was contended in that case that the surety on the bond was released by a change in the contract subsequent to the execution of the bond, and the court held that unless a substantial change was made in the contract the surety would not be released. Mr. Justice Pitney rendered the opinion of the Supreme Court in that case and after reviewing the authorities bearing upon this question, said: "In the case of a bond given under a statute such as the act of February 28, 1899, there is no single obligee or creditor. The surety is charged with notice that he is entering into what is, in a very proper sense, a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away, for its own benefit or convenience, the rights of the beneficiaries. In the light of the statute, the surety becomes bound for the performance of the work by the principal in accordance with the stipulations of the contract, and for the prompt payment of the sums due to all persons supplying labor and material in the prosecution of the work provided for in the contract."

■■ Therefore, in the light of the foregoing rule announced by the Supreme Court of this state, as well as by the Supreme Court of the United States, under the facts of this case the payment of the sum of $850 was not a material change in the contract that would release the surety company from its liability. The most that can be said for this contention is that it has been injured only to that extent. The case was tried before the court without the aid of a jury. No findings of fact are contained in the record and judgment was rendered as above indicated. The trial court determined the issues involved in this case, and it is to be presumed that the court found all necessary facts which have any support in the evidence to sustain the judgment. There was sufficient evidence to support the judgment. The Court of Civil Appeals erred in holding, as a matter of law, that the church was not entitled to judgment against the surety company. In other respects the judgment of the Court of Civil Appeals is correct.

Therefore, we recommend that the judg-

ment of the Court of Civil Appeals be reversed and that the judgment of the trial court be in all respects affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals reversed, and judgment of the district court is affirmed.