SANDS MOTEL, Appellant,

v.

Paul HARGRAVE, d/b/a Hargrave Plumbing Company, Appellee.

No. 7398.

Court of Civil Appeals of Texas.

Texarkana.

June 12, 1962.

Rehearing Denied July 10, 1962.

Harkness & Friedman, Texarkana, for appellant.

Atchley, Russell & Hutchinson, Texarkana, for appellee.

CHADICK, Chief Justice.

This is a suit for damages for breach of contract. The judgment of the trial court is affirmed.

The plaintiff, Sands Motel, instituted an action against the defendant, Paul Hargrave, to collect $5,656.00 as damage the motel alleged it suffered by reason of Hargrave's breach of a contract to furnish and install plumbing and heating equipment according to certain plans and specifications

agreed upon by the parties in an annex to the motel. Hargrave's answer interposed special exceptions, entered a general denial and affirmatively plead performance of the contract in accordance with plans and specifications and the motel architect's acceptance and approval of the completed undertaking. In the alternative, defendant Hargrave plead defenses of estoppel and waiver.

The trial judge submitted ten special issues to the jury. By answer to the first two issues the jury established that Hargrave did not install certain hot and cold water pipes in a workmanlike manner, but that he performed the contract in accordance with the plans and specifications. In following issues the jury found that the architect was an agent of the motel, but at the completion of the work he did not have full knowledge of all material facts relative to installation of the hot and cold water pipes in controversy, and did not accept the completed work with full knowledge of the manner the pipes were installed. The jury also found that Hargrave advised the motel's manager of the likelihood of a transference of heat from the hot water pipes to the cold water pipes prior to the time he installed them, and that the motel's manager stated to Hargrave that the motel would assume the risk of such heat transference, and then found on other issues that this representation was false, that it was made with the intent that Hargrave rely on it, and that it caused Hargrave to act as he did in the completion of the contract.

The plaintiff motel moved for judgment on the verdict and for judgment non obstante veredicto, as well as for the court to disregard the jury's answer to the special issue on performance in accordance with plans, etc., and the issues presenting the theory of estoppel and waiver. The defendant moved in his own behalf for judgment on the jury findings and alternatively for the court to disregard the jury's verdict on Hargrave's workmanship. Then, also in the alternative, the defendant's motion

plead that if the court was of the opinion the jury's verdict on the issue of Hargrave's performance and the issue of Hargrave's workmanship were in conflict, that judgment be rendered upon the jury's answers to the estoppel and waiver issues. The court overruled the motel's motions, failed to indicate any disposition of Hargrave's, and entered its written judgment which recited all special issues submitted and the jury's answers thereto, and stated that "* * * in accordance with the above findings of the jury in response to the special issues submitted to them the court is of the opinion and finds that the defendant is entitled to judgment, * * *", and proceeded to adjudge that Sands Motel take nothing by its suit, etc.

Prior to November 20, 1958, the Sands Motel began preparation to add to its motel plant. It employed an architect to draw plans and prepare specifications for the proposed annex. No general or prime contract was made. The construction and installation to be done was divided into several parts and contracts let accordingly. Contract for furnishing and installing the plumbing and heating equipment was let to Hargrave on an independent basis.

The contract between Hargrave and the motel dated November 20, 1958, specified the material Hargrave was to furnish, and referred to the architect's plans and specifications for the work that he was to do. Printed in the contract form was this language: "I guarantee all materials used in this contract to be first class, and the entire job to be done in a neat and substantial manner." Additionally, the specifications carried this language:

"CORRECTION OF WORK AFTER FINAL PAYMENT: Neither the final certificate nor payment nor any provision in the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship and he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which

shall appear within a period of one year from the date of substantial completion. The owner shall give notice of observed defects with reasonable promptness. * * *

"GUARANTEE. In addition to specific warranties on equipment this contractor will be responsible for all material and workmanship under his jurisdiction for a period of one year from date of finished job, and shall, without charge, replace any item that fails and correct any malfunction in equipment for the stated one year period."

A drawing, the architect's plumbing layout, was introduced in evidence. This drawing required a six inch inside diameter sewer line, a two inch gas line, a three inch cold water pipe, a two inch hot water pipe, and a two inch hot water circulating pipe to be laid between the outer foundation of the motel building and the property line, a space four feet in width. The specifications required all piping to be pitched so the entire system could be drained, with exterior lines to be buried at least eighteen inches underground. Evidence was offered, which is not disputed, that it was customary that the sewer line be first laid at the lowest level in the area in which the several systems were to be located, and its depth from the surface was dictated by drainage into the city sewage system and varied from five to six feet. A City Ordinance required the gas line be not less than thirty inches distant from other lines and the building foundation. The four systems of pipes were confined by the plans to a cross section space four feet in width and from five to six feet in depth.

Hargrave testified, and there is no contention to the contrary, that he inquired of the architect whether or not the plans and specifications required him to insulate the hot and cold water lines to prevent heat transference, and that he was advised that the specifications did not require lines buried in the ground to be insulated. The testimony doesn't fix the time, but it is in evidence that a conversation between Hargrave and the motel manager took place after a substantial amount of the work called for by the contract had been performed wherein Hargrave advised the manager that in his opinion installation in accordance with the plans would cause heat to be transferred from the hot to the cold water lines, unless the lines were insulated against it. The manager requested an estimate of the additional cost of insulation, and when he was advised declined to authorize insulation, remarking that, "We will worry about it when the time comes."

The motel offered testimony that shortly after the newly constructed facilities were put into operation guests began complaining that the cold water taps ran hot water. Investigation by the motel management confirmed the complaint, and Hargrave was called upon to rectify his work to the end that the hot and cold water system be made to function properly. He refused. An experienced plumber was employed by the motel to locate and correct the malfunction. A trench was opened along one side of the motel in the area the plans locate the pipe systems. A photograph of the open trench exposing two lines of pipes was introduced in evidence. This photograph shows two lines, apparently of the same diameter, lying against and parallel to each other for the greater distance of the open trench, and in one place crossing and lying one on top of the other for a short distance. As photographed, the pipes appear to lie as close together as they could easily be placed. The motel's plumber testified that one was a hot and the other a cold water pipe line, and that positioning two such pipes as he found them was not considered workmanlike and was contrary to custom and practice in the plumbing trade. He separated the pipes shown in the picture, and since then the hot and cold water systems have functioned properly.

Hargrave controverted the motel's testimony, saying that the lines shown in the picture, the ones that the motel's plumber

identified as being hot and cold water pipes were both hot water pipes, and that he had installed the cold water pipe approximately eight inches away from either of the hot water pipes.

Hargrave's further testimony was that the plans so restricted the size of the area allotted to the several systems of pipes that when allowance was made for minimum depth of 18″ below surface, a seven inch outside diameter sewer line, and 30 inch separation of the gas line from foundation or other lines, it was impossible to place the cold water line a sufficient distance from the hot water lines to prevent a transference of heat. He pointed out that the plans did not detail the position, distance of separation, or otherwise specify the location of the various pipe systems, but simply required the pipes to be in the designated area. The jury resolved the conflict in the evidence against Hargrave. Though it is only with respect to the installation of the hot and cold water pipe systems that the jury found Hargrave failed to perform in a workmanlike manner.

The appellant has briefed four points of error. The first and second respectively are that the court erred in granting the defendant judgment after the jury found that Hargrave did not install the hot and cold water pipe in a workmanlike manner, and erred in this respect even though the plans and specifications were followed by Hargrave. The other points question the propriety of the court's refusal to disregard the jury's answer to the issue of performance in accordance with plans and specifications and to disregard jury answers to the issues submitting the defenses of estoppel and waiver. Disposition of the appeal will be facilitated by first considering the point regarding the court's refusal to disregard the jury finding of performance in accordance with the plans, etc.

■■■ The pleadings and proof raised ultimate issues of fact respecting performance in accordance with plans, as well as, failure to install the hot and cold water

pipes in a workmanlike manner. These issues were submitted separately. The evidence narrowed the fact in question to the character of the workmanship, good or bad, as displayed in laying the hot and cold water lines in the area to which they were restricted by the plans. The law applicable to the facts of this case as gathered from scant authority appears to be that when plans are so shaped that the installation specified can not be done in accordance with customary practices in the plumbing trade the parties to the contract agree that the workmanship obligation is modified by the plans and is satisfied if the workmanship is as reasonably consistent with good workmanlike practices as the plans allow. The courts of Texas have not passed directly upon this proposition but such rule is presaged by Our Lady of Victory College and Academy v. Maxwell Steel Company, Tex. Civ.App., 278 S.W.2d 321, n. w. h.; Lucey v. Dedman et al., Tex.Civ.App., 21 S.W.2d 546 at p. 547; and cases cited therein, as well as reason and sound business ethics. See also United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Building Contracts, 10 Tex.Juris.2d § 18, p. 20; Building and Construction Contracts, 9 Am.Juris. § 28, p. 20; 4 Elliott on Contracts, § 3620 p. 802, and the many cases noted in the cited texts. Good workmanship has a relative meaning, depending upon the context in which it is used. 9 Am.Juris. § 10, p. 11. Otherwise parties might be bound to obligations impossible to discharge and which were never intended to be undertaken.

The appellant cites numerous cases, including Lincoln v. Pohly, Tex.Civ.App., 325 S.W.2d 170; Westbrook v. Watts, Tex.Civ. App., 268 S.W.2d 694; Metropolitan Casualty Co. of New York v. Medina Rural High School District No. 5, Tex.Civ.App., 53 S.W.2d 1026; Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061; American Surety Co. of New York v. San Antonio Loan & Trust Co., Tex.Civ. App., 98 S.W. 387; and Bastrop & Austin Bayou Rice Growers' Ass'n v. Cochran,

Tex.Civ.App., 138 S.W. 1188, all of which are instructive but are distinguishable on the facts and on anaylses are not believed to run counter to the rule stated as applicable in this case or decisive of the question presented here.

Assuming the law to be as stated, the ultimate issues made by the pleading and proof was whether the pipe installation in dispute was done in a workmanlike manner, as the standard of good workmanship was limited or restricted by the plans binding the parties. The special issue on performance in accordance with the plans, that the appellant moved the trial court to disregard, submitted this ultimate issue. The issue was worded, "Do you find * * Hargrave performed the contract in accordance with plans and specifications?" No instruction or definition was given the jury that would limit or modify the scope or effect of the jury's affirmative answer thereto. It has been previously noted that the plans and specifications obligated Hargrave to do the work in a good and workmanlike manner. The affirmative answer necessarily included a finding that the work was done in a good and workmanlike manner, as that obligation was a part of the plans and specifications. Under the circumstances disclosed by the record there was no error in submitting the issue, it had support in the evidence, and the court properly refused to disregard it.

The conclusion expressed determines this appeal, but the procedural and factual circumstances recited arouse questions that if not put to rest gives the appearance of incompleteness to the opinion and justify additional discussion. The first of these is next discussed.

To avoid the conflict apparent in the jury's verdict on the two issues so far discussed, the issue of fact as made by the evidence could best have been submitted by an issue similar to the first submitted in this case, that is, by inquiring whether "Paul Hargrave did not install the hot and cold water pipes in controversy in a workmanlike manner", together with an instruction to the jury that when plans and specifications agreed upon by the parties impose a limitation upon good workmanship, as recognized and practiced in the plumbing trade in Texarkana, the plumber is obligated to perform the work in a manner reasonably consistent with the practices of his craft insofar as the plans and specifications will allow.

Another question is the effect of the conflict in the jury's verdict on the two issues as submitted. The appellant did not assign error in this respect in his motion for new trial, nor has it been briefed. Regardless of doubt * which may have heretofore existed regarding conflicts in the jury's verdict on special issues as constituting fundamental error of which this court must take notice, the question is now settled. In McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265, the Supreme Court says there is now no difference between rules governing Courts of Civil Appeals and those governing the Supreme Court regarding consideration of unassigned error, since repeal of Art. 1837 Vernon's Ann.Tex.Civ.St. In the recent case of St. Paul Fire & Marine Insurance Company v. J. T. Murphree, Tex., 357 S.W.2d 744, 5 Tex.Sup.Ct.Journal 376, the Supreme Court refused to treat a conflict in the jury's verdict on special issues as fundamental error, and held that failure to assign the conflict as error in a motion for new trial waived any complaint and precluded a consideration of it on appeal. Any question of conflict has been waived in the instant case.

Though such questions are not reached and the opinion will not be extended for a discussion, this court is of the opinion that the evidence does not support the jury verdict on the estoppel and waiver issues.

The judgment of the trial court must be affirmed.

* See 4 (McDonald) Texas Civil Practice, § 18.05 p. 1433–1434.