HOUSTON FIRE & CASUALTY INSUR-
ANCE COMPANY, Appellant,

v.

RIESEL INDEPENDENT SCHOOL
DISTRICT, Appellee.

No. 4151.

Court of Civil Appeals of Texas.
Waco.
Jan. 23, 1964.

Rehearing Denied Feb. 20, 1964.

Kerr, Day & Cook, Ft. Worth, Black & Stayton, Austin, Naman, Howell, Smith & Chase, Waco, for appellant.

Murray Watson, Jr., Waco, Bracewell, Reynolds & Patterson, Grant Cook, Houston, for appellee.

WILSON, Justice.

The school district sued the contractor and the performance bond surety for breach of contract to construct a school building, alleging faulty construction and failure to erect the building in accordance with the plans and specifications. Default judgment was rendered against the contractor. The jury found the contractor failed to construct the building, grade and foundation in a good and workmanlike manner in accordance with the plans and specifications, that the failures were material, that the building could not be repaired without substantial alteration of the structure as a whole, that if it had been constructed according to contract, plans and specifications, its value would have been $310,000, that its value in its condition at time of trial was $100,000, that the architect's failure to design the building so it would be structurally sound was not the cause of plaintiff's damages. The surety appeals from judgment against it for $210,000.

The surety's initial attack on the judgment is that the school district either (a) made final payment to the contractor on the architect's certificate of inspection and acceptance, which constituted a fulfillment of the contract; or (b) made such payment without the architect's certificate, which constituted a violation of the district's duty under the contract, and a change in its terms. It says that under either prong of this dilemma it was discharged from liability.

The surety's postulate is based on contract provisions that monthly progress payments of 90% of the architect's estimates would be made to the contractor, and "upon substantial completion of the entire work, a sum sufficient to increase the total payments to 90% of the contract price" ; that final payment should be due 10 days "after substantial completion of the work, provided the work be then fully completed and the contract fully performed" ; that upon receipt of written notice the work was ready for final inspection and acceptance,

the architect should inspect, "and when he finds the work acceptable under the contract and the contract fully performed, he shall issue a final certificate over his own signature, stating that the work provided for in this contract has been completed and accepted by him under the terms and conditions thereof", and that the entire balance is due and payable; that the contract would "be considered fulfilled (save as provided in any bond or bonds or by law), when all the work has been completed, and the final inspection made by the architect and engineer, and final acceptance and final payment made by the board". It also urges the condition of the bond that the contractor shall promptly and faithfully perform the contract; and the surety's options upon default: to remedy the default, complete the contract, or obtain bids for completion to be submitted to the owner.

The school district made a series of payments totalling more than the original contract sum, the last of which was on the same date the board minutes show a motion was carried "to accept the building" and pay the contractor and architect the balance due. The minutes recite that about one month before the final payment was made the board authorized payment of a monthly estimate to the contractor, who "agreed not to ask for any more until the corrections have been made to the building, and final acceptance." Thereafter the school district occupied and continued to use the building. No certificate of the architect was introduced in evidence. Appellant's motions for instructed verdict, for judgment, and judgment non obstante veredicto, based on the alternative contentions above, were overruled.

It is unnecessary to decide what the legal effect of these facts would be under authorities relating to finality of the architect's decision, such as Boettler v. Tendick, 73 Tex. 488, 11 S.W. 497, 5 L.R.A. 270, relied on by appellant. The surety's position overlooks other important contract provisions which make unsound this premise on which its motions were based.

In the first place, the contract contained no provision making the decisions of the architect final except "in matters relating to artistic effect", and others, which are not involved here. It expressly provided the architect was the agent of the owner "only to the extent provided in the contract documents" and should "use his power under the contract to enforce its faithful performance by both" owner and contractor. It provided that partial payments under the contract would "not in any way relieve the contractor of the responsibility herein imposed."

■ Art. 20 of the general conditions reads: "Neither the final certificate, nor payment, nor any provision of the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion." Art. 25 provides: "No certificate issued nor payment made to the contractor, nor partial or entire use or occupancy of the work by the owner, shall be an acceptance of any work or materials not in accordance with this contract." The agreement contained additional express recitals to the effect that the "making and acceptance of final payment" shall not constitute a waiver of the owner's claims "from faulty work appearing after final payment". Construing the contract as an entity by considering all its terms, as we must do in determining intent, it is clear the parties did not intend that final payment or occupancy would conclude the contractor's duty or relieve the surety of its obligation.

The court disregarded a negative jury finding, in answer to a special issue inquiring whether the architect issued his final certificate prior to final payment, upon appellee's motion that the finding was immaterial and was without support in the evidence. Appellant complains of this action.

■ We recognize the general rule urged by appellant that where the contract pro-

vides that payment shall be made to the contractor by the owner "only on certificate of the architect", as in Williams v. Baldwin, Tex.Com.App., 228 S.W. 554; or "upon the architect's certificate", as in Park Presbyterian Church v. William Cameron & Co., Tex.Com.App., 58 S.W.2d 63, a payment in breach of the condition will relieve the surety. See 127 A.L.R. 22. There is no such prerequisite, however, in the present contract. It is agreed only that "final payment shall be due 10 days after substantial completion of the work provided the work be then fully completed and the contract fully performed." The provision for the architect's certificate is not related to any condition of final payment, and such payment is not made contingent on the certificate. The provision for payment "upon certificate of the architect" is only in the event "full completion is delayed through no fault of the contractor", a circumstance not here involved. The only other provision for certification concerns partial payment estimates. There was no pleading by the surety of any breach in the latter respect.

■ Aside from the absence of any condition in the contract requiring an architect's certificate as a prerequisite to the making of final payment, the only direct evidence in the record on the issue is that of appellee's subsequently employed engineer, which is not here complained of, that he believed he saw the architect's final certificate that the building was completed according to the plans and specifications and that he recommended it be accepted and paid for. "Q. Where did you see it? A. In the file of the school board" in the superintendent's office. The school board minutes of June 22, 1955 recite that the contractor attempted to "get them to accept the building. The board decided it would rather meet with the architect before making a decision." The last payment was not authorized until August 8, 1955. The circumstance relied on by appellant to raise an inference to support the jury's answer is that the last payments to the contractor on or after June 22,

1955 were less than 10% of the total contract price, and on the latter date the board desired to meet with the architect before accepting the buildings. It is also said that failure of appellee to produce the architect's certificate tends to strengthen the probative force of this circumstance. No demand was made for its production. Appellant did not plead failure to retain 10% of the contract price. After expressly pleading the architect made a final inspection and approved the work, it pleaded alternatively that appellee made final payment without obtaining an architect's certificate. In our opinion, the record fails to raise an inference to support the jury finding, and it was properly disregarded.

The surety next says there was no evidence that the defects for which damages were awarded developed during the one-year guarantee period after final acceptance to which liability under the contract and bond was limited. The provision on which this contention is predicated reads, "In *addition* to the *specific guarantees* as are required by the several sections of the specifications for the work to be performed thereunder, the contractor shall guarantee, in writing, all of the work to be performed and all of the materials and/or workmanship, for a period of one year from and after the date of final acceptance by the owner, of the completed work". Any defects in material or workmanship or damage to other work caused thereby "which may develop within said one-year period", the contractor was to make good at his expense, and without cost to the owner. The school district did not plead or rely on this additional written guarantee, and it was not introduced in evidence. The surety did not plead the quoted provision. The contract otherwise reiterates the obligation of the contractor to perform the work in a good and workmanlike manner and to execute the work completely and satisfactorily in compliance with the specifications. It provides acceptance and payment shall not constitute a waiver of claims for faulty work. The condition of the bond is that

the contractor shall promptly and faithfully perform the contract.

■■ Appellee did not sue on the additional written one-year guarantee. It sued for breach of contract. The quoted clause did not prescribe an exclusive remedy, and appellee was not restricted to such a cause of action. The "guarantee in writing" which the contractor was obligated to execute "in addition to" those otherwise provided in the contract, was one to make good at his own expense defects which developed during one year. This did not destroy his general obligation to faithfully perform the contract proper in accordance with the specifications. As is stated on the face of the agreement, it was to be an added guarantee. The distinction is drawn in Butler, Williams & Jones v. Goodrich, Tex.Civ.App., 306 S.W.2d 798, 807; and Huntington Corp. v. Inwood Construction Co., Tex.Civ.App., 348 S.W.2d 442, 445. See Stark v. George, Tex.Com.App., 252 S.W. 1053. Whether the proof established that the defects appeared or developed within a year is therefore immaterial to appellee's right of recovery.

Appellant further urges that it executed two separate performance bonds sued on, each covering a separate building project; and the pleadings, evidence and charge erroneously fail to segregate the damages as between the two projects and the two bonds.

By a single instrument the contractor agreed to furnish materials and perform work required by drawings and specifications entitled "Plans for a high school, cafeteria and gymnasium." Under the heading, "Contract Sum", was the owner's agreement to pay therefor $216,462, and the further language: "Contractor agrees for the sum of $74,419 to build Elementary School as shown on plans and specifications. This figure includes School Master Monitor controls, book cases and base (glaze tile) for Elementary, High School, Gym and Cafeteria." The contract was dated August 31, 1954. Appellant executed one performance bond in the sum of $216,462 dated August 31, 1954, and another "addi-

tional" performance bond dated November 1, 1954. The first was conditioned on performance of contract dated August 31, 1954 for "construction of high school, gymnasium and elementary school"; the second for performance of contract (date blank) for "construction of elementary school." The general specifications consist of a single document dated July 10, 1954 entitled "general specifications for high school, cafeteria, gymnasium and elementary school". The single set of plans is entitled, "Plans for an High School, Cafeteria, Gymnasium and Elementary School." The building was a single structure, the elementary school and high school areas constituting separate wings between which were the gymnasium and cafeteria.

The parties approached consummation of their agreement by successive steps, apparently, increasing the scope of the project after a successful bond election. But these steps led to a compact which was an entity, and of which the concomitant bonds were an integral unit. Appellant's additional bond was obviously intended to cover the increased contract price and additional work which encompassed all four areas of the unified structure: elementary school wing, high school wing, cafeteria and gymnasium.

■■ Written contracts "executed in different instruments whereby a single transaction or purpose is consummated are to be taken and construed together as one contract." Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 475; Pacific Mut. Life Insur. Co. v. Westglen Park, Inc., 160 Tex. 1, 325 S.W.2d 113, 116. The parties treated the contract and work as a unit; the trial court did not err in doing likewise.

■ Appellant complains of refusal of its requested issues which would have inquired whether the architect agreed that re-enforcing rods, prefabricated for 10-foot pier holes, would be installed after the holes were deepened; and whether the use of such rods "was a material change from the original plans." In our opinion these were

evidentiary issues. Art. 15 of the general contract conditions entitled "changes in the work," provided: "The owner, without invalidating the contract, may order extra work or make changes by altering, adding to, or deducting from the work, the contract sum being adjusted accordingly."

Complaints are made of overruling objections to the court's charge. The record does not reflect that the objections were presented to or acted on by the court as required by Rule 272, Texas Rules of Civil Procedure. Other points have been carefully considered and are overruled. Affirmed.

## ON MOTION FOR REHEARING

By extended printed argument appellant insists we are in error in holding liability is not limited to defects appearing within one year.

In support of its position, appellant urges the provision in the specifications as to the contractor's one-year guarantee, quoted in the original opinion; provisions as to termination, full performance and completion; and particularly Article 20 of the standard form American Institute of Architects contract general conditions (which the parties used), providing that neither final certificate nor payment shall relieve the contractor of responsibility for faulty materials and workmanship, and adding that he shall remedy defects and pay for damage to other work resulting therefrom "which shall appear within a period of one year from the date of substantial completion."

Appellant's argument is simply, logically and authoritatively answered by the manual designed for use in interpretation and construction of the A. I. A. standard contract documents: Parker & Adams, "The A. I. A. Standard Contract Forms and the Law" (Little, Brown & Co. 1954), pps. 38, 39. After noting that no court decision had passed on the contention now made by appellant that the contractor's liability is limited to one year by Article 20, that text states:

"It does not seem sound to read into this provision an intent to void the broad generalities of the immediately preceding clause, and the clear statement in Article 25 that 'no certificate issued nor payment made * * * shall be an acceptance of any work or materials not in accordance with this contract.' The statute of limitations in a given state would determine the duration of the contractor's responsibility under this broad provision. There would be no reason for the insertion of this provision in Article 25, nor the similar provision in Article 20, if the intention were to limit the contractor's responsibility for defects to the one year period named in Article 20. It seems more reasonable to interpret the provision requiring correction of defects appearing within a year as constituting a specific contractual liability that would be covered by a guaranty bond which would cease to be in effect long before the end of the period established by the statute of limitations."

The specifications in the present case emphasize the correctness of this construction that the "additional guarantee" and the one-year liability provision in Article 20 constitute a "specific contractual liability" separate from the general liability of the contractor and its surety on the performance bond.

Appellant now shows by supplemental transcript that its objections to the charge were presented to and overruled by the trial court. We therefore consider its points complaining of submission of Special Issue No. 1, inquiring whether the contractor failed to construct the school building in accordance with the contract and the plans and specifications; and Issue No. 3, inquiring whether the contractor failed to construct the foundation of the building in a good and workmanlike manner. Appellant's objections were that the issues constituted general charges, and did not limit the jury to specific failures pleaded and raised by the evidence.

To meet appellant's exception to appellee's general pleading that the building was not

constructed in accordance with the plans and specifications and in a good and workmanlike manner, the court required appellee to specify the deviations from the contract, plans and specifications, and failures to construct in a good and workmanlike manner. Appellee thereupon alleged 21 such specifications, on which evidence was introduced.

■ These special issues are undoubtedly general. Generality does not always constitute reversible error. Some determining factors are suggested in Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99, 104. In City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61, the issue submitted was whether buildings "[constituted] a serious fire hazard to life and property." The petition alleged various facts as constituting the buildings a fire hazard, 22 specifications of which are itemized in the opinion. Following these specifications the pleading alleged that "due to the foregoing conditions" the buildings were a serious fire hazard to life and property. The Supreme Court said, "Respondent would have the trial court submit to the jury as separate issues each of the foregoing allegations of fact." The Court then held the charge had submitted the controlling issue, and the specific allegations were "of matters of fact that fall within the scope of the ultimate question. They are evidentiary in their character, being facts that tend to prove that the buildings are fire hazards, facts to be considered by the jury in answering the issues submitted."

In Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978, the issue was whether the acts and conduct of defendant in a divorce case constituted cruel treatment. The Supreme Court held there was but one ultimate issue of fact to be submitted to the jury: whether the acts and omissions of defendant under all the evidence constituted cruel treatment, although the jury was required to consider a "group of facts", and although the one ultimate issue embraced "a number of subsidiary facts."

The ultimate issues here involved were discussed in Sands Motel v. Hargrave, Tex. Civ.App., 358 S.W.2d 670, writ ref. n. r. e. There, issues were submitted as to whether the work under a construction contract was done in a workmanlike manner, and whether the contract was performed in accordance with the plans and specifications. After holding that the good workmanship obligation was relative, and qualified by the workmanship practices allowed by the plans, the court said "the special issue on performance in accordance with the plans, that the appellant moved the trial court to disregard, submitted this ultimate issue. This issue was worded, 'Do you find * * * Hargrave performed the contract in accordance with plans and specifications?'"

■ Appellant's present contention under its objections would have left the trial court but one alternative: to submit a series of issues inquiring whether each separate specified failure or deviation did constitute (either or both) a deviation from the plans and specifications, or a failure to perform the work in a good and workmanlike manner. Although this alternative would have only required a minimum of 21 issues in the present case, suppose, for illustration, that plaintiff had alleged several hundred specified defects, deviations or failures to perform in a good and workmanlike manner. The practical impossibility of so splitting the ultimate issues in this case is obvious. In our opinion the objections to these issues (or at least to Special Issue No. 3 which would support the judgment), were properly overruled. See Hodges, Special Issue Submission in Texas, p. 101; Pope, Broad and Narrow Issues, 26 Tex.Bar J. 921. Other points concerning objections to the charge do not present reversible error.

We have considered appellant's points relating to objections to the court's charge, although we have doubt as to our authority to do so. The supplemental transcript contains a nunc pro tunc order overruling appellant's objections to the charge, which order is signed, rendered and entered on February 11, 1964, after the original opin-

ion of this court was delivered. Rule 272, Texas Rules of Civil Procedure provides that the requirement that objections to the court's charge shall be in writing will be sufficiently complied with if the objections are dictated to the court reporter as therein provided "and are subsequently transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript." It is obvious "the ruling and signature on" these objections were not transcribed, endorsed and filed in compliance with said rule "in time to be included in the transcript." In order that appellant's points may be fully considered, however, we have treated them as if the rule was complied with without intending to hold that we have authority to pass on the points.

Appellant's motion for rehearing is overruled.