**BURTON–DIXIE CORPORATION, Plaintiff-Appellee,**

v.

**TIMOTHY McCARTHY CONSTRUCTION COMPANY, Inc., Defendant-Appellant.**

**No. 30455**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Jan. 14, 1971.

---

* ■ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York. et al. 5 Cir. 1970, 431 F.2d 409.

J. Corbett Peek, Jr., J. Robert Hardcastle, Atlanta, Ga., for defendant-appellant.

Robert L. Pennington, Henry B. Troutman, Jr., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from the district court's order denying the alternative

motions of Timothy McCarthy Construction Company for a new trial or for judgment notwithstanding the jury verdict rendered in favor of Burton-Dixie Corporation. We affirm.

In 1960 Burton-Dixie Corporation engaged Timothy McCarthy Construction Company to construct a building in Blacksburg, South Carolina. Burton-Dixie furnished McCarthy with a general idea of what it wanted, and McCarthy agreed to supply all the materials and prepare the final plans and specifications. The parties memorialized their agreement on a standard form contract issued by the American Institute of Architects. The building was completed about March 1, 1961, and Burton-Dixie soon began its occupancy. Burton-Dixie made final payment of the contract price on May 31, 1961. On May 12, 1962, Burton-Dixie first noticed a leak in the roof of the building. An inspection showed that a large portion of the roof was blistered, that is, there were places on the roof similar to mole hills. This was immediately reported to McCarthy. McCarthy had its roofing subcontractor make temporary repairs, but those repairs failed to stop the leaks. Sporadic efforts to repair the roof continued for several years. When it appeared, however, that the only real solution to the problem would be to rip out the roof and install a new one, McCarthy disclaimed liability. After giving notice to McCarthy, Burton-Dixie then employed Industrial Decking and Roofing Company to replace the defective roof with a proper one.

When McCarthy again denied liability, Burton-Dixie commenced this action against McCarthy for breach of contract and demanded damages in the amount of $13,687.92, the cost of its new roof. The district court denied McCarthy's

motion for summary judgment, and the case was tried before a jury. At the conclusion of the evidence, the court denied McCarthy's motion for a directed verdict, and the jury returned a verdict in favor of Burton-Dixie in the amount of $13,687.92. The court then denied McCarthy's alternative motions for a new trial or for judgment notwithstanding the verdict, and McCarthy appealed.

### I.

McCarthy first contends that Burton-Dixie's failure to submit the dispute to "the Architect" for decision and its subsequent failure to submit the matter to arbitration bars it from any recovery in this case. Article 20 of the General Conditions of the contract, dealing with the contractor's liability for faulty work, provides that "all questions arising under this Article shall be decided by the Architect subject to arbitration." Article 40 states that all disputes subject to arbitration under the contract shall be submitted to arbitration in accordance with American Institute of Architects procedures and that "the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other." It is undisputed that Burton-Dixie never submitted the dispute to the architect or demanded arbitration. Therefore, argues McCarthy, the plaintiff's suit is barred as a matter of law, and the district court erred in denying McCarthy's motion for judgment notwithstanding the verdict.[1] We cannot agree.

It is well established that agreements to submit disputes to architects or to arbitrators, just like any other contract terms, may be waived. *See, e. g., Cornell & Co. v. Barber & Ross*

---

1. Burton-Dixie responds to McCarthy's arguments with three contentions: (1) Although the standard form refers to "the Architect", there was no contract with an architect and there was no functioning architect to whom any question could have been submitted. (2) There was no dispute as to whether the roof was built according to plans and specifications. (3) By its acts and conduct McCarthy has waived any right to insist on arbitration. Since we rest our decision in the case on Burton-Dixie's third argument, we need not express any opinion as to the merits of its other two contentions.

Co., 1966, 123 U.S.App.D.C. 378, 360 F. 2d 512, 513; E. I. duPont deNemours & Co. v. Lyles & Lang Constr. Co., 4 Cir. 1955, 219 F.2d 328, 334; American Locomotive Co. v. Gyro Process Co., 6 Cir. 1950, 185 F.2d 316, 318; American Sugar Ref. Co. v. The Anaconda, 5 Cir. 1943, 138 F.2d 765, 767; Galion Iron Works v. Adams, 7 Cir. 1942, 128 F.2d 411, 413. There is no set rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement. The question depends upon the facts of each case and usually must be determined by the trier of facts. *See, e. g.,* Amtorg Trading Corp. v. Camden Fibre Mills, Inc., 1952, 304 N.Y. 519, 109 N.E. 2d 606, 607. In this case the district court properly charged the jury that any conduct of the parties inconsistent with the notion that they treated the arbitration provision in effect or any conduct that might be reasonably construed as showing that they did not intend to avail themselves of the arbitration provision may amount to a waiver. *See* Premier Petroleum Co. v. Box, Tex.Civ. App.1950, 255 S.W.2d 298, 301, writ ref'd, 152 Tex. 321, 257 S.W.2d 105; 5 Am.Jur.2d Arbitration & Award § 51; Annot., 161 A.L.R. 1426, 1428; Annot., 117 A.L.R. 301, 304. In accordance with the test announced in Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, our task is then to examine the record to see whether substantial evidence supports the jury's conclusion that McCarthy waived its right to insist upon submission of the dispute to the architect or to arbitration.

Mr. T. D. Wilkins, vice-president of Burton-Dixie, testified that when the first leak appeared on May 12, 1962, McCarthy immediately took steps to have its roofing subcontractor make the necessary repairs. Although the roofer did make some repairs, within three or four months the roof began leaking again. Burton-Dixie again reported the trouble to McCarthy, who again urged its subcontractor to correct the problem. Nevertheless, the roofer's efforts were ineffective in eliminating the leaks. In October 1965, after three years of Burton-Dixie's complaints, correspondence and meetings with McCarthy and McCarthy's subcontractors, McCarthy finally disclaimed any responsibility for the defective roof. Until that time everyone concerned had agreed that the roof was faulty, and McCarthy had repeatedly promised to take care of the problem. At this point, however, an inspection showed forty or fifty leaks and variations in the thickness of the concrete deck from three-quarters of an inch to two inches although the specifications called for a uniform thickness of at least two inches. Burton-Dixie concluded that nothing short of a new roof would solve the problem.[2]

Mr. Wilkins testified, and McCarthy admitted in its answers to interrogatories, that at no time before answering the complaint in the instant lawsuit did McCarthy demand that the matter be submitted to the architect or to arbitration. Even when Burton-Dixie filed suit against McCarthy, McCarthy did not at-

---

2. The defendant's superintendent Federer testified that the deck was poured during freezing or near freezing weather, that it was necessary to scrape ice off the deck before applying the roofing, that he was aware that there was moisture in the roof deck and that he was aware that it was improper to trap moisture in a roof deck by applying roofing when the deck was wet. The cause of the leaks, according to Mr. Federer, was the trapped moisture plus the performance of the roof work during very cold weather.

As Carl Marshal of Industrial Decking and Roofing Company testified, where moisture is trapped in a roof deck, hot sun turns the moisture to vapor and thus causes an expansion, or blistering. of the roofing, and then when the sun goes down the vapor will return to moisture, permitting the roof to settle; this process continues as long as there is moisture in the deck, causing wrinkling, and finally breaking of the roofing. producing leaks.

tempt to invoke the arbitration provision in the contract. In its answer to the complaint, McCarthy did not ask the court to stay proceedings pending arbitration, but rather denied liability and set up as an affirmative defense Burton-Dixie's failure to arbitrate. Moreover, McCarthy impleaded as third-party defendants two of its subcontractors and proceeded to litigate the dispute over the defective roof.

From these facts we conclude that the jury could reasonably find that McCarthy waived its right to insist upon arbitration. On this ground, therefore, the district court did not err in failing to grant the motions for a new trial and for judgment notwithstanding the verdict.

### II.

■ Second, McCarthy contends that under Article 20 it is required to remedy only those defects in the building that appear within a period of one year from the date of final payment or from the date of the owner's occupancy, whichever is earlier.[3] McCarthy argues that the alleged defect in this case first appeared on May 12, 1962, more than one year after Burton-Dixie began occupancy on March 1, 1961. Therefore, concludes McCarthy, as a matter of law it could not be liable for the alleged defects in the roof, and the district court

erred in denying its motion for judgment notwithstanding the verdict.

Burton-Dixie, on the other hand, argues that Article 20 is inapplicable to this case. In its view Article 20 is a special warranty or guaranty by the contractor for a specified period of time. Burton-Dixie maintains that it is not basing its right to damages upon this special warranty but rather upon McCarthy's failure to perform its contract in a proper, workmanlike manner. Thus the one-year time limit on defects contained in the first sentence of Article 20 is in this case immaterial. In support of its argument, Burton-Dixie points to the second sentence of Article 20: "Neither the foregoing nor any provision in the contract documents, nor any special guarantee time limit, shall be held to limit the Contractor's liability for defects, to less than the legal limit of liability in accordance with the law of the place of building." As long as its suit for breach of contract was filed within the applicable statute of limitations, Burton-Dixie argues, it is entitled to damages for faulty construction no matter when the defective condition first appeared.

Since there are apparently no decisions of the South Carolina or Georgia[4] state courts construing contract provisions similar to Article 20, McCarthy calls our attention to a Virginia case, Richmond Redevelopment & Housing

3. Article 20 of the General Conditions reads as follows:

> The Contractor shall remedy any defects due to faulty materials or workmanship and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final payment, or from the date of the Owner's substantial usage or occupancy of the project, whichever is earlier, and in accordance with the terms of any special guarantees provided in the contract. Neither the foregoing nor any provision in the contract documents, nor any special guarantee time limit, shall be held to limit the Contractor's liability for defects, to less than the legal limit of liability in accordance

> with the law of the place of building. The Owner shall give notice of observed defects with reasonable promptness. All question arising under this Article shall be decided by the Architect subject to arbitration, notwithstanding final payment.

4. The parties are unsure what law applies in this diversity suit. South Carolina is the place of building, to which law Article 20 of the General Conditions makes reference. Georgia is the site of the federal district court in which Burton-Dixie brought suit. Since the courts of neither state have construed contract provisions similar to Article 20, we need not decide which "nonprecedent" would ordinarily apply.

Authority v. Laburnum Constr. Corp., 1954, 195 Va. 827, 80 S.E.2d 574. In that case the owner sued the contractor for damages to one of its buildings in a housing project destroyed by a gas explosion alleged to have been caused by the contractor's faulty workmanship. The construction contract contained the following language: "The contractor shall remedy any defects in the work and pay for any damage to other work resulting therefrom which shall appear within a period of one year from the date of final acceptance unless a longer period is specified." Although the court affirmed a judgment for the contractor primarily on the ground that the action was barred by the applicable statute of limitations, in the process it commented on the one-year guarantee clause. That clause, the court said, "must mean that the defendant would not be liable for faulty materials or workmanship for a period beyond one year." 195 Va. 827, 80 S.E.2d at 582–583.

We are persuaded, however, by the contrary reasoning of the Texas courts construing an older, but similar, standard form American Institute of Architects contract. In Houston Fire & Cas. Ins. Co. v. Riesel Ind. School Dist., Tex. Civ.App.1964, 375 S.W.2d 323, writ ref'd n. r. e., the school district sued the contractor who had constructed a school building and the surety on his performance bond for breach of the contractor's obligation to perform his contract in a good, workmanlike manner. The defendants argued that Article 20 of the General Conditions [5] limited their liability to repairing defects appearing within one year of completion. Affirming a jury verdict for the school district, the court said,

> Appellant's argument is simply, logically and authoritatively answered

by the manual designed for use in interpretation and construction of the A.I.A. standard contract documents: Parker & Adams, "The A.I.A. Standard Contract Forms and the Law" (Little, Brown & Co. 1954), pps. 38, 39. After noting that no court decision had passed on the contention now made by appellant that the contractor's liability is limited to one year by Article 20, that text states:

> "It does not seem sound to read into this provision an intent to void the broad generalities of the immediately preceding clause, and the clear statement in Article 25 that 'no certificate issued nor payment made * * * shall be an acceptance of any work or materials not in accordance with this contract.' The statute of limitations in a given state would determine the duration of the contractor's responsibility under this broad provision. There would be no reason for the insertion of this provision in Article 25, nor the similar provision in Article 20, if the intention were to limit the contractor's responsibility for defects to the one year period named in Article 20. It seems more reasonable to interpret the provision requiring correction of defects appearing within a year as constituting a specific contractual liability that would be covered by a guaranty bond which would cease to be in effect long before the end of the period established by the statute of limitations."

*Id.* at 328.

We agree with this construction of the contract. Article 20 is, as it states on its face, an added guarantee, inserted in the contract to extend rather than limit the contractor's liability for faulty construction. As such, it does not prescribe the owner's exclusive remedy, and it in

---

5. Article 20 of the General Conditions of this standard form contract provides:
Neither the final certificate, nor payment, nor any provision of the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship and, unless otherwise

specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion.
*See* 375 S.W.2d at 325.

no way impairs the contractor's general obligation to perform his contract in a proper, workmanlike manner. Suing for breach of contract, Burton-Dixie did not rely on the special one-year guarantee. Therefore, whether the defect appeared within one year of Burton-Dixie's occupancy is immaterial to its right of recovery. *See* Houston Fire & Cas. Ins. Co. v. Riesel Ind. School Dist., Tex.Civ. App.1964, 375 S.W.2d 323, 327.

As long as the evidence established that the defective condition of Burton-Dixie's roof was caused by McCarthy's faulty construction, Burton-Dixie was entitled to damages regardless when the defect first appeared.[6] The cause of the defective condition was of course a question of fact. The jury returned a verdict for Burton-Dixie. Our review of the record has convinced us that substantial evidence supports the jury's verdict. Thus the district court did not err in denying McCarthy's alternative motions for a new trial or for judgment notwithstanding the verdict. *See* Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365, 373–375.

Affirmed.

---

**6.** McCarthy argues obliquely that under the law of South Carolina or Georgia a contractor is not liable for building defects appearing after completion and acceptance of his work in the absence of a special guarantee such as the first sentence of Article 20.

Article 25 of the same General Conditions, however, provides in part that

No certificate issued nor payment made to the Contractor, nor partial or entire use or occupancy of the work by the Owner, shall be an acceptance of any work or materials not in accordance with this contract. The making and acceptance of the final payment shall constitute a waiver of all claims by the Owner, other than those arising from unsettled liens, from faulty work appearing after final payment or from requirement of drawings or specifications, and of all.claims by the Contractor, except those previously made and still unsettled.

Thus the contract itself refutes McCarthy's argument: by express contractual provision the owner does not waive by acceptance and final payment his right to damages for faulty work appearing thereafter.

In this regard the contract merely embodies the general rule with respect to waiver of defects.

\* \* \* [T]he general rule as to waiver of defects by an acceptance does not apply to latent defects. The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance. In such case the owner, although having paid for the building, would be entitled to recover damages for a breach of the contract at such time as he discovers the extent of the defects or after he has had reasonable time and opportunity by due diligence, to have discovered it.

13 AmJur.2d Building & Construction Contracts § 55.