Opinion filed June 8, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 8, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00179-CV 

                                                    __________

 

                                            JOHN DORI, Appellant

 

                                                             V.

 

                           BONDEX
INTERNATIONAL, INC., Appellee

 



 

                                          On
Appeal from the 32nd District Court

 

                                                          Nolan
County, Texas

 

                                                   Trial
Court Cause No. 18,422

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

This is an appeal from a take-nothing judgment in
a toxic-tort personal injury suit.  John
Dori sued Bondex International, Inc. alleging that he contracted mesothelioma
from exposure to its joint compound.[1]  The jury found that Bondex=s products were defectively designed,
but the jury awarded Dori no damages. 
The trial court entered a take-nothing judgment in Bondex=s favor.  We affirm.

 








                                                               Background
Facts

In December of 1998, Dori began experiencing back
pain.  He sought medical treatment from
an orthopedic back specialist and an arthritis doctor.  They provided him no relief, so he consulted
a gastroenterologist.  She scheduled an
ultrasound and determined that he had an accumulation of fluid in his lower
abdomen.  Two to three liters of fluid
were drained and sent for testing.  This
testing suggested malignant mesothelioma, and Dori was referred to an
oncologist.

The oncologist ran additional tests including a
laparoscopy.  The laparoscopy revealed
the presence of several white growths dispersed throughout his abdominal
cavity.  Initially, they were reported as
non-cancerous, but Dori was subsequently advised that his sample had been sent
to the Fox Chase Cancer Center near Philadelphia and that specialists there had
determined that he suffered from well-differentiated papillary malignant
mesothelioma.  This disease is incurable
and is always fatal.

According to the National Cancer Institute,
mesothelioma is a rare form of cancer in which malignant (cancerous) cells are
found in the protective sac that covers most of the body=s
internal organs.  This protective sac is
called the mesothelium.  The mesothelium
of the chest is called the pleura, the abdominal cavity the peritoneum, and the
heart the pericardium.  There are 2,500
to 3,000 reported cases of mesothelioma a year in the United States, compared
with 170,000 cases of lung cancer.  Most
mesothelioma involves the parietal pleura membrane surrounding the lungs.  Peritoneal mesothelioma is extremely rare and
usually amounts to approximately 150 cases a year in the United States.

Dori=s
doctors treated his illness by addressing his symptoms.  He underwent periodic fluid draining
procedures and had his gallbladder, spleen, appendix, 19-20 inches of his large
intestine, and the mesothelial linings removed. 
He also underwent chemotherapy. 
At the time of trial, Dori=s
medical bills were approximately $230,000.

Dori was employed by the Heritage Foundation, a
think tank.  He was ultimately discharged
because his post-surgical condition prevented him from working.  Dori was making between $26,000 and $27,000 a
year when he was discharged, but he was scheduled to receive a promotion which
would have increased his earnings to $40,000 a year.  Because of his physical condition, Dori is
essentially limited to staying home at his parent=s
house.








                                                                          Issue

            Dori challenges the trial court=s
judgment with one issue.  Dori argues the
jury=s
no-damage finding is against the great weight and preponderance of the evidence
because the jury found that Bondex=s
products contained a design defect which was a producing cause of his
mesothelioma and because the objective evidence presented at trial established
his illness and its effects.

                                                              Standard
of Review

When conducting a factual sufficiency review, we
cannot substitute our judgment for that of the jury.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).  The jury is the
sole judge of the credibility of the witnesses and the weight to be given to
their testimony.  Jones v. Tarrant
Util. Co., 638 S.W.2d 862, 866 (Tex. 1982). 
We are required to consider and weigh all of the evidence in the case
and remand for a new trial only if we conclude that the jury=s verdict is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003); Dow Chemical Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001).

                                                               The
Jury=s
Verdict.

The trial court=s
charge contained three liability questions. 
The first was a general negligence question, and the second was a
marketing defect question.  The jury
found for Bondex on both.  The third
question asked:

Was there a design defect in the asbestos products
manufactured and/or distributed by Defendant Bondex International, Inc. at the
time such products left its possession that was a producing cause of the
asbestos-related injuries, if any, of plaintiff, John Dori?

 

The jury answered yes to this question.

Question four was predicated on an affirmative
answer to one or more of the liability questions and asked:

What sum of money, if paid now in cash, would
fairly and reasonably compensate John Dori for his injuries that resulted from
the acts, omissions and/or products in question?

 

Consider the elements of damages listed below and
none other.  Consider each element
separately.  Do not include damages for
one element in any other element.  Do not
include interest on any amount of damages you find.








Do not reduce the amounts, if any, in your answers
because of the negligence, if any, of Plaintiff.

 

The charge contained separate answer blanks for physical pain and
mental anguish, disfigurement, physical impairment, medical care, and lost
wages.  The jury wrote A0@
in each blank.  Question five was a
future damage question with separate blanks for physical pain and mental
anguish and physical impairment.  The
jury wrote A0@ in both blanks.

                                           Was
the Jury Required to Award Damages?

Initially, we must determine the effect of the
jury=s design
defect finding.  Dori argues that it
established both Bondex=s
breach of duty and causation.  Because he
has objective evidence of injury, the jury=s
zero damage findings are, by necessity, against the great weight and
preponderance of the evidence.  Bondex
essentially asks this court to ignore question three=s
producing-cause language.  Bondex
contends the damage questions limited the jury=s
consideration to injuries that resulted from their products and that,
because there was no evidence that a Bondex product caused Dori to contract
mesothelioma, the trial court=s
judgment should be affirmed.

Dori=s
argument is based upon the zero damages rule. 
He argues that, when there is objective evidence of an injury, jury
findings of no injury or damage are against the great weight and preponderance
of the evidence.  See, e.g., Davis v.
Davison, 905 S.W.2d 789, 790 (Tex. App.CBeaumont
1995, no pet.).  Dori correctly notes
that this court has distinguished between objective and subjective damages and
has concluded that the jury may disbelieve the plaintiff=s
testimony about subjective injuries but it cannot disregard unrefuted,
objective injury evidence.  See, e.g.,
Kraatz v. Faubion, 617 S.W.2d 277, 279 (Tex. Civ. App.CEastland 1981, no writ).

Dori contends that his mesothelioma is an
objective condition which has caused him to suffer significant pain, mental
anguish, physical impairment, and disfigurement.  Because the jury found a design defect that
was a producing cause of his injuries, he concludes the jury was
required to award some damages.








The continued viability of the zero damages rule
is at best questionable.  See Golden
Eagle, 116 S.W.3d at 776 (O=Neill,
J., concurring).  In Golden Eagle,
the court held that the mere failure to award damages for physical impairment
is not against the great weight and preponderance of the evidence simply
because there is objective evidence of injury. 
Id. at 774. Furthermore, even in Kraatz, 617 S.W.2d at
277, we recognized limitations to the zero damages rule when the claimant
argued that the jury=s
finding of an injury in one question required a damage award in a subsequent
question.  In Kraatz, the
plaintiff was involved in a collision between a tractor and a pickup.  The jury awarded him damages for medical
bills and lost earnings but not for physical pain or mental anguish.  The plaintiff argued that, because the jury
found that he had been injured in the accident, the findings of no physical
pain or mental anguish damages were against the great weight and preponderance
of the evidence.  Id. at 279.  We overruled plaintiff=s
point of error, noting that his contention was that the jury=s findings were in conflict.  That point, however, had not been preserved
and could not be considered by us on appeal. 
Dori did not object to the jury=s
verdict on the basis of conflicting answers. 
On appeal, Dori does not contend the jury=s
answers are in conflict B
instead he argues only that the zero damage findings are against the great
weight and preponderance of the evidence. 
Bondex contends that the jury=s
findings should be reconciled but, if they cannot, that Dori waived any error
by not objecting to the verdict prior to the jury=s
release.

Bondex relies principally upon Srite v.
Owens-Illinois, Inc., 870 S.W.2d 556 (Tex. App.CHouston
[1st Dist.] 1993), rev=d
sub nom on other grounds, Owens-Illinois, Inc. v. Estate of Burt,
897 S.W.2d 765 (Tex. 1995),[2]
for its argument that, because the jury was instructed to limit its damage
award to injuries resulting from its products and there was no evidence
that Dori=s
mesothelioma was caused by a Bondex product, the jury=s
zero damages findings are correct. 
Bondex reads too much into Srite=s
holding.  The Houston court did
correctly predict the supreme court=s
subsequent analysis in Golden Eagle by holding that the zero damages
rule conflicts with the standard of review articulated in Pool.  The Houston court also affirmed a jury=s verdict of no past damages for
several asbestos claimants.   However,
all but one claimant received future damages. 
Their claims relied almost entirely on subjective complaints like
shortness of breath, and they had other health problems such as obesity which
contributed to their physical condition.








In this case, there is no question that Dori has
well-differentiated papillary malignant mesothelioma; that it is incurable; and
that he has incurred significant medical bills, lost his job, and undergone
major surgery.  There is no claim that
his disease was caused by some voluntary activity such as smoking, that his
physical limitations are due to other physical conditions like obesity, or that
the jury=s total
verdict fairly compensates him for his injury. 
Finally, there is no claim that his injuries can be attributed to a
damage element that was not included within the past or future damage
questions.  Srite, therefore, is
informative but not controlling.

We cannot agree with Bondex=s
argument that the jury=s
findings can be reconciled by treating the damage questions as the causation
issues.  Question three not only asked
the jury if Bondex=s
asbestos products contained a design defect, it asked if this defect Awas a producing cause of the
asbestos-related injuries, if any, of plaintiff, John Dori.@ 
The court instructed the jury that A[p]roducing
cause@ meant Aan efficient, exciting, or contributing
cause that, in a natural sequence, produced the injury.@  The jury unanimously answered this question
yes.   Unless the record demonstrates
otherwise, we must presume that the jury followed the trial court=s instructions.  In re K.R., 63 S.W.3d 796, 800-01
(Tex. 2001).   Bondex does not challenge
the jury=s design
defect finding.  We have, therefore, an
unchallenged finding of producing cause.

We do, however, agree with Bondex that Dori=s argument is based upon the premise
that the jury=s answers
are in conflict and that this issue was not preserved.  Jury findings are in conflict when one answer
establishes a cause of action or defense while another destroys it.  The test is whether, when taking the finding
alone in the one instance, a judgment should be entered in favor of the
plaintiff and, when taking it alone in the other, a judgment should be entered
in favor of the defendant.  Waltrip v.
Bilbon Corp., 38 S.W.3d 873, 877 (Tex. App.CBeaumont
2001, pet. denied).

Tex. R.
Civ. P. 295 provides a procedure for correcting conflicting jury answers.  Under Rule 295, the trial court may instruct
the jury of the conflict and retire the jury for further deliberations.  However, the trial court must be made aware
of the conflict before the jury is discharged, or error is waived.  Roling v. Alamo Group (USA), Inc., 840
S.W.2d 107 (Tex. App.C
Eastland 1992, writ den=d);
Kraatz, 617 S.W.2d at 277; Sands Motel v. Hargrove, 358 S.W.2d
670 (Tex. Civ. App.CTexarkana
1962, writ ref=d n.r.e).








Dori strongly disagrees with this characterization
of his appeal.  Dori notes that appellant
is the master of his appeal and sets forth the bases for that appeal, that we
cannot sua sponte grant an appeal on grounds not raised by appellant, and that
the appellee cannot modify an appellant=s
argument.  Dori has carefully and
thoughtfully drafted his briefs to challenge the jury=s
verdict on factual sufficiency grounds and has avoided any direct reference to
conflicts in the jury=s
findings.  But, the clear import of his
argument is that the jury=s
liability finding required a damage award. 
Dori reasons that the jury=s
affirmative answer to question three resolved the question of causation in his
favor and that a causation element cannot be read into the damage
questions.  A finding of no damages, in
light of the jury=s
determination that his mesothelioma was caused by Bondex=s
design defect, is per se against the great weight and preponderance of the
evidence.

Dori=s
well-crafted argument is simply another way of saying the jury=s verdict contained conflicting
answers.[3]   The jury=s
finding of a design defect which was the producing cause of Dori=s asbestos-related injuries cannot be
reconciled with the jury=s
subsequent determination that no injury resulted from Bondex=s products.  Because Dori did not raise this issue before
the trial court, we find that the jury=s
design defect finding does not mandate a damage award.  See Springs Window Fashions Div., Inc. v.
Blind Maker, Inc., 184 S.W.3d 840, 867 (Tex. App.CAustin
2006, n.p.h.)(absent a conflict complaint the court must give effect to each
jury finding in the ordinary fashion).

                         Are
the Jury=s No-Damage
Findings Against the Great Weight and 

                                                    Preponderance
of the Evidence?

 

Even though the jury=s
design defect finding cannot be asserted as a mandatory basis for an award of
damages, its no-damage findings must still be based upon factually sufficient
evidence.  Dori properly preserved this
issue with his motion for new trial and presents it in his briefs with this
court.  Consistent with the supreme court=s instruction in Pool, 715
S.W.2d at 635, we will consider and weigh all of the evidence to determine if
the jury=s
no-damage findings are against the great weight and preponderance of the
evidence and will detail the basis for our conclusion.








Mesothelioma is one of the rarest cancers reported
in the United States.  There was no
dispute that Dori has well-differentiated papillary malignant mesothelioma, a
form of peritoneal mesothelioma.  There
was substantial dispute as to whether this form of mesothelioma is caused by
asbestos, whether the type of asbestos to which Dori was exposed could account
for his illness, and whether his exposure was sufficient to cause
well-differentiated papillary malignant mesothelioma.  Both parties relied upon expert testimony and
utilized individuals regularly involved in asbestos litigation.  Neither side challenges the qualifications of
the other=s experts
or the reliability of their opinions. 
The jury, therefore, had the task of resolving any conflicts in the
testimony.

1. 
Mesothelioma and Asbestos

There was no dispute that asbestos is the cause of
most mesothelioma.  The dispute concerned
asbestos=s role in
Dori=s
particular illness.  One of Dori=s experts, Dr. Douglas A. Pohl, a
board-certified pathologist, testified that at least 90% of all mesothelioma
cases are caused by exposure to asbestos. 
He described studies which have shown a connection between mesothelioma
and specific trades that used asbestos products, such as insulators, auto
mechanics, drywall workers, and plasterers.

When an individual breathes asbestos fibers, the
fibers can migrate from the lung to the pleura and the mesothelial cells which
line and lubricate the lung as it expands and contracts against the chest
wall.  Dr. Arnold R. Brody, a professor
of pathology at Tulane University Medical School, testified that the fibers can
then move into the body=s
blood flow or lymphatic system.  In the
peritoneal cavity is a series of lymph nodes called mesenteric lymph nodes
which can collect asbestos fibers.  The
fibers can travel from the nodes to the fluid that moistens the mesothelial
surfaces and into the peritoneal cavity where they affect the mesothelial cells
in the peritoneum.  The asbestos fibers
can cause the mesothelial cells to divide improperly and lack a complete set of
DNA.

Dr. Pohl described a study, which was published in
the 2001 American Journal of Epidemiology, of Chinese asbestos workers who were
exposed only to chrysotile asbestos. According to Dr. Pohl, a Alongitudinal study@ of workers from 1972 through 1996 was
performed.  The researchers found that
workers=
mortality rates due to pleural and peritoneal mesothelioma increased as a
result of working with asbestos.  Dr.
Pohl testified that OSHA, the EPA, and the NIOSH have all concluded that
asbestos causes mesothelioma.  Dr. Brody
testified that the World Health Organization has identified asbestos as a cause
of mesothelioma.  There is, however,
evidence in the scientific literature of mesothelioma cases that were not
caused by asbestos or at least with no known asbestos exposure.  Some researchers believe that 42% of all
peritoneal mesothelioma cases are idiopathic, or have no known cause.








Dr. Allan Feingold, an M.D. who specializes in
lung disorders, testified for Bondex.  He
testified that mesothelioma usually develops in the parietal pleura membrane
and is usually caused by amosite and crocidolite fibers.  People who are heavily exposed to these
fibers can contract peritoneal mesothelioma, but well-differentiated papillary
malignant mesothelioma is generally not caused by asbestos.  Dr. Pohl disagreed, testifying that all types
of mesothelioma have been associated with asbestos.

Dr. Feingold was aware of four cases of
well-differentiated papillary malignant mesothelioma being linked to
asbestos.  It is usually reported in
individuals with no possible asbestos exposure and insufficient latency to
develop the disease.  Dr. Feingold
testified that Dr. Victor Roggli, a pathologist from Duke University, has
recently published a book in which he concluded a history of asbestos exposure
was not present in most cases of well-differentiated papillary malignant mesothelioma.  Dr. Roggli relied, at least in part, on a
prior study which reported that more than 50% of the cases of
well-differentiated papillary malignant mesothelioma were not related to
asbestos.

2. 
Chrysotile Asbestos and Mesothelioma

There are three principal types of asbestos:  crocidolite, amosite, and chrysotile.  Chrysotile is the most common and accounts
for 95% of the asbestos in the United States. 
Bondex=s joint
compound contained chrysotile fiber asbestos. 
Bondex disputed whether chrysotile asbestos can cause
well-differentiated papillary malignant mesothelioma.[4]  

Dr. Pohl and Dr. Brody both testified that
crocidolite, amosite, and chrysotile have each been associated with
mesothelioma and that the published literature says chrysotile asbestos causes
mesothelioma of the pleura and peritoneum. 
Dr. Brody agreed that crocidolite and amosite are more potent and that
the potential of chrysotile asbestos to cause mesothelioma has been much
debated.  Dr. Barry Castleman, who holds
a Ph.D. in public health, testified that the EPA has accepted chrysotile as a
cause of mesothelioma.  Dr. Pohl
described studies of Canadian miners who mined only chrysotile asbestos and
factory workers who used only chrysotile asbestos but who still contracted
mesothelioma.  He also described an
experiment conducted on rats that concluded 
chrysotile asbestos causes pleural mesothelioma.








Dr. Brody acknowledged that one study concluded
that only crocidolite asbestos causes mesothelioma.  He also agreed that Dr. Andrew Churg is a
preeminent pathologist who believes chrysotile is associated with mesothelioma
at a much lower rate than either amosite or crocidolite asbestos.  Dr. Churg believes that, for chrysotile to
cause mesothelioma, there must be sufficient exposure to cause asbestosis or
pleural plaque, which is a high level of exposure.  Dr. Brody additionally acknowledged that Dr.
Roggli, with whom he had written several papers, had also concluded that low
doses of chrysotile asbestos will not cause mesothelioma and that asbestos
exposure is not present in most cases of well-differentiated papillary
malignant mesothelioma.

Dr. Feingold described a study which found no
documented case of peritoneal mesothelioma in miners who were heavily exposed
to chrysotile asbestos.  He also
described a study conducted in 1982 of women who worked at two British
factories during World War II making gas masks. 
One factory used crocidolite asbestos and the other chrysotile.  The study concluded that workers using
crocidolite were at increased risk for mesothelioma while those who used
chrysotile were not.

3. 
Secondhand Exposure

There was no evidence Dori ever used a Bondex
product.  Nor did he contend that he was
present when others used one.  Any
exposure was incidental.  There was
substantial dispute whether Dori=s
illness could result from incidental exposure. 
Dr. Pohl testified that there is no safe threshold level for asbestos
and that anyone breathing above the level of asbestos in regular air is at
risk.  Dr. Pohl and Dr. Brody both
testified that wives, children, and pets have contracted mesothelioma from
exposure to asbestosis dust brought home by their husband/father/owner.  Dr. Pohl opined that Dori=s illness resulted from exposure to
asbestos dust through his grandfather.

Dori testified that he believed he was exposed to
Bondex through his grandfather, Peter Dori, 
who built custom homes and manufactured pre-hung doors.  When Dori was a child, Peter built four
houses.  Peter normally used plaster
walls, although Dori recalled one job site where his grandfather used
drywall.  Peter subcontracted out most of
the plaster work; but Peter and his employees would do occasional patchwork,
cleanup work, or repairs.  They used
Bondex Joint Compound to repair wall damage. 
The joint compound came in five-pound boxes which were made of thin
cardboard.  The compound was a
powder.  It was mixed with water,
applied, and sanded after drying.  Mixing
and sanding caused some dust.  The dust
would get on the workers=
clothes.








Dori=s
uncle, Joseph Dori, worked for Peter as a young man.  He testified that, if Peter used Bondex Joint
Compound on the four houses built while Dori was a child and if Peter did all
of the mixing, application, and sanding himself, he probably would have worked
with the compound for approximately six hours.

Peter had a detached garage at his house which was
used to store supplies.  There were
probably two boxes of leftover Bondex Joint Compound in the garage.  There were also bags of cement, mortar, and
possibly lime.

Dori grew up close to Peter=s
house and liked to spend time with his grandfather.  He went to job sites with him.  When Dori was at Peter=s
house, he and his cousins played in Peter=s
garage.  They played soccer and sometimes
hit one of the boxes inside the garage with a ball.  Dori could not testify that the boxes
contained a Bondex product, but he did testify that when the ball hit a box it Araised up a mess@
and caused a puff of dust to escape. 
Family members testified that Dori and his cousins played in the garage
during visits to Peter=s
house from 1967 to 1972.  Dori believes
they hit a ball into a box 30 to 40 times during this period.  Dori helped his grandfather clean the garage
several times.  Sometimes they swept it
out, and sometimes they hosed it out.

Dr. Brody testified that there is no safe level
for asbestos exposure and that there are cases of brief exposure to asbestos resulting
in mesothelioma.  He testified that
cancer is a disease which occurs because of genetic errors and that different
people have different susceptibilities. 
Dr. Brody agreed that as a general rule one needs more exposure to
chrysotile asbestos to contract mesothelioma but opined that some individuals
can get it from low doses.  He also
agreed that generally one would need more exposure for peritoneal mesothelioma
but testified that some individuals will be more susceptible than others.

Dr. Castleman testified that there is some debate
over dose response because scientist do not have a way to measure or observe
the low dose, low risk curve.  Instead,
they extrapolate from high dose and high risk to low dose and low risk.  He understands that some believe low level
exposure to chrysotile asbestos will not increase the risk of mesothelioma, but
he disagrees and believes that low level exposures still carry some risk of
mesothelioma.








Dr. Feingold disagreed with these
conclusions.  He testified that the cases
of secondhand exposure involved a worker who was heavily exposed to asbestos
and family members who were exposed to the worker for a number of years.  Dr. Feingold concluded that Dori=s incidental exposure to Bondex Joint
Compound could not have been the cause of his well-differentiated papillary
malignant mesothelioma.

                                             Conclusion

After reviewing all of the evidence, deferring as
we must to the jury=s
resolution of fact questions and considering only the jury=s damage findings, we cannot say that
those findings were so against the great weight and preponderance of the
evidence as to be manifestly unjust. 
There was considerable disagreement between the expert witnesses over
whether Dori=s illness
was caused by exposure to Bondex Joint Compound.  The evidence was factually sufficient to
support a conclusion that Dori was not exposed to asbestos from that compound
or that his illness did not result from any exposure.  Dori=s
issue is overruled, and the judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

June 8, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.








                                               C
O N C U R R I N G   O P I N I O N

I join in the judgment but write separately
because (1) the two jury answers can be reconciled and (2) once reconciled, it
is clear that the jury did not find that Bondex=s
products caused appellant=s
unique type of mesothelioma.

The third question, answered in the affirmative,
was whether there was a design defect in the products manufactured or
distributed by Bondex that Awas
a producing cause of the asbestos-related injuries, if any, of plaintiff, John
Dori.@  At that point, the jury=s answer was that the design defect was
a producing cause of asbestos-related injuries of appellant if there were any
such asbestos-related injuries.

The jury next answered question four, and it is
clear from that answer that the jury did not think there were any
asbestos-related injuries.  As the
majority states, there was substantial dispute among the experts whether this
form of mesothelioma was caused by asbestos. 
The jury heard expert testimony that well-differentiated papillary
malignant mesothelioma was generally not caused by asbestos.  The jury may have had this testimony in mind,
as well as the extremely limited exposure of appellant to Bondex=s products, when it answered that
appellant had no injuries that Aresulted
from the acts, omissions and/or products@
of Bondex.  The jury=s answer to question four determined
that appellant=s
mesothelioma was caused by something other than Bondex=s
products.  The evidence is both legally
and factually sufficient to support the take-nothing judgment.

Moreover, if the answers are considered to be in
conflict, the majority=s
rationale is correct.

 

 

TERRY McCALL 


JUSTICE

 

June 8, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











     [1]Dori=s original petition included three other plaintiffs and
twenty-five defendants.  Only Dori=s claims against Bondex are before us.





     [2]The
supreme court considered only the calculation of prejudgment interest and did
not address the remainder of the Houston court=s
decision.





     [3]Cf.
Kitchen v. Frusher, 181 S.W.3d 467, 472-73 (Tex. App.CFort Worth 2005, no pet.)(analyzing alleged conflict
between liability question which asked if plaintiff had performed compensable
work with a damage finding that the reasonable value of that compensable work
is zero).





     [4]Cf.
Celotex Corp. v. Tate, 797 S.W.2d 197, 203 (Tex. App.CCorpus Christi 1990, writ dism=d by agr.), where the court affirmed a jury finding
that plaintiff=s pleural mesothelioma was caused by exposure to
chrysotile asbestos fibers.